## THE STATE OF KANSAS v. WM. W. JONES.

1. PRELIMINARY EXAMINATION, *No Bar to Further Prosecution.* One preliminary examination for a criminal offense is no bar to another preliminary examination for the same offense; nor is it any bar to a full prosecution for such offense, although the defendant may have been discharged on the first preliminary examination. A mere preliminary examination does not put the accused in jeopardy, within the meaning of §10 of the Bill of Rights.

2. INFORMATION; *Carnal Knowledge of Female.* An information charging the defendant with "willfully, unlawfully and feloniously defiling a female under eighteen years of age, by carnally knowing her while she was confided to his care and protection by her parents," is sufficient, although it may not allege in terms that the girl's parents were her natural guardians, or that the defendant knew that the girl was under eighteen years of age.

3. —————— *Character, and Consent of Female.* The offense prohibited by §233 of the crimes-and-punishment act, of defiling a female under eighteen years of age, by carnally knowing her while she is confided to the defendant's care and protection, may be committed, although the female may be a person of unchaste character, and may consent to the unlawful embraces of the defendant.

4. —————— *What is "Care and Protection."* Where the parents of a girl under eighteen years of age permit a man to take her to his own home, for the purpose that she may be hired by his wife to work in

his own family, such girl is so confided to his care and protection, that, if he defile her in the meantime by carnally knowing her, he is guilty of the offense defined by said ?233 of the crimes-and-punishment act.

*Appeal from McPherson District Court.*

INFORMATION, charging *Jones* with "willfully, unlawfully, and feloniously" defiling a female under eighteen years of age, she "being then and there confided to the care and protection" of said *Jones* by her parents. A plea in abatement was filed, in support of which defendant gave in evidence the record of an examination had and held on the 27th of January 1876, by and before J. W. H. and W. L. F., two justices of the peace, on a complaint made by R. B. Holbrook charging *Jones* with said offense, on which examination said justices found "that no offense was committed," and *Jones* was thereupon discharged by them. The record also shows that on the 29th of January said Holbrook made and filed a new complaint before G. M. S., another justice of the peace of said county, making the same charge against *Jones,* on which said justice held an examination, and for which offense he required *Jones* to enter into a recognizance to appear and answer before the district court. The information was filed April 27th 1876. The plea in abatement was overruled. Trial at the May Term 1876. Verdict, guilty — and *Jones* was sentenced to imprisonment in the county jail for the term of nine months, and to pay a fine of five hundred dollars, and cost of suit. From this judgment and sentence, *Jones* appeals.

*J. G. Mohler,* for appellant.

*M. P. Simpson,* county-attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution under § 233 of the crimes-and-punishment act, (Gen. Stat. 369,) charging the defendant with defiling a female under eighteen years of age by carnally knowing her while she was confided to his care and protection. As we understand, the defendant

waives all objections to the proceedings of the court below, which if sustained would merely require a new trial, and asks that we shall decide the case upon such questions only as go to the very foundation of the present prosecution. This we shall do.

I. The defendant objects to the jurisdiction of the court below, and this he does upon the ground that on the first and original preliminary examination in the case he was discharged. It seems that the defendant had two preliminary examinations. On the first, he was discharged — on the second, he was held to answer in the district court. The question now is, whether the first preliminary examination was a bar to all further and subsequent proceedings for the same offense. We think it was not. One preliminary examination for a criminal offense is no bar to another preliminary examination for the same offense; nor is it any bar to a full prosecution for such offense, although, as in this case, the defendant may have been discharged on the first preliminary examination. A mere preliminary examination does not put the accused in jeopardy within the meaning of the constitution. (Const., Bill of Rights, § 10.)

II. The defendant claims that the information upon which he was tried does not state facts sufficient to constitute any offense. The information among other things states as follows: "That one William W. Jones, late of said county of McPherson, at the county of McPherson, in the state of Kansas, and within the jurisdiction of this [the district] court, on the 28th day of December 1875, did willfully, unlawfully and feloniously defile one Louisa Antoinette Holbrook, by carnally knowing her, she, the said Louisa Antoinette Holbrook then and there being a female under the age of eighteen years confided to the care and protection of the said William W. Jones by Rufus B. Holbrook and Adaline Holbrook, the father and mother of the said Louisa Antoinette Holbrook." The objections urged against said information are as follows: 1st, The information does not allege that the said father and mother of the said Louisa Antoinette were

her natural guardians, or had authority to confide her to the care and custody of said defendant Jones. 2d, Nor does the information allege that Jones knew that said Louisa Antoinette was under eighteen years of age.

We think the information is sufficient in these respects. A female person under eighteen years of age is a minor, (Gen. Stat. 580, § 1,) and the father and mother are by law the natural guardians of the persons of their minor children, and each parent equally so with the other. (Gen. Stat. 512, § 1; Const., art. 15, § 6.) And except in rare cases, the parents have the actual care and control of their minor children. And such would seem to have been the case in this very case, for the information itself states that said Louisa Antoinette was confided to the defendant Jones by her parents.

It is probably not necessary that the information should allege in any form that the defendant *knew* that the person whom he defiled was under eighteen years of age; and it is probably not necessary in any case that the state should prove that the defendant had any such knowledge. And it is very doubtful even whether the defendant would be allowed in any such case to prove as a defense that he had no such knowledge. When a man commits what he knows to be an immoral act, he ought to be required to take the entire consequences of such act, although he may not have been fully advised as to all the circumstances connected with the act. In fact, when a man sets out willfully to do an immoral act, he ought to be bound to know all the circumstances connected with such act. Such a person is in no proper condition to plead innocence. (In connection with this subject, see Bishop's Statutory Crimes, §§ 632, 644; Train & Heard, Precedents of Indictments, 444, Ch. 41, Form 3.) We think that all that is necessary in a case like this is, for the state to allege and prove the fact that the girl defiled was under eighteen years of age, without alleging or proving that the defendant had knowledge of such fact. But the state did allege in this case that the defendant "did willfully, unlawfully, and feloniously defile" said girl,

etc., which comes very near alleging knowledge on the part of the defendant. And the state also proved that the defendant had full knowledge that the girl was under eighteen years of age.

III. The defendant claims that the court below erred in excluding certain evidence tending to show that the girl was not a person of chaste character. He claims that if she was unchaste she could not be defiled — that none but the chaste and virtuous can be defiled. There is perhaps some reason for this claim, and yet we can hardly think that the law was intended for the protection of those only who are absolutely pure. It can scarcely be possible that a girl who has lost her virtue by a single act of unchastity, by a single illicit amour, must forever afterward be wholly abandoned to the insidious wiles of every designing libertine in whose care or custody she may unfortunately be confided. Of course, such a girl is weak; but the protecting care of the law is generally designed for the weak, and not merely for the strong. Of course, such a girl has already been defiled; but may she not be further defiled? Is it possible that a girl of less than eighteen years of age can reach such a depth of sin and pollution that there can be no lower deep into which she may be plunged by an unfaithful protector to whom she may have been confided? If not, then the protecting care of the law should be generously thrown around her. And the feelings of her friends and guardians, who undoubtedly desire her reformation, should be regarded, and not violated by the very man in whom they have reposed confidence. But the statute itself would seem to define how she may be defiled. She may be defiled "by" the offender "carnally knowing her." We therefore think that it makes no difference whether said Louisa Antoinette was chaste or unchaste. Nor do we think that it makes any difference whether she consented, or was forced to yield to the unlawful embraces of the defendant. The question is merely, whether he had carnal connection with her while she was under his care and protection. Even if she encouraged his unlawful desires, even if she was the

moving spirit in their lascivious embraces, still, if he had carnal connection with her while she was under his care and protection, (she being under eighteen years of age,) we think he was guilty of the offense charged against him.

IV. The court below instructed the jury among other things, as follows: "If you shall find the said Louisa Antoinette was by her parents sent with, or allowed by her parents to go with, the defendant, upon his request to his house for the purpose of seeing defendant's wife to make a contract for work in his family, and for no other purpose, such facts would constitute the care and protection contemplated by the statute." The defendant excepted to this instruction. The defendant also raised this same question by asking the court below to give certain instructions, which the court refused to give; and also raised the same question by moving for a new trial because of misdirection of the jury, and because the verdict was not sustained by sufficient evidence, which motion was overruled. We do not think that the court erred in any of these respects. The evidence applicable to this question showed substantially as follows: On December 28th 1875, the defendant Jones went in a two-horse wagon to the house of Mr. Holbrook. Mr. Holbrook, Mrs. Holbrook, and their daughter Louisa Antoinette, who was then between the ages of fifteen and sixteen years, were all at home. The defendant then stated that his wife wanted to hire a girl to work for her; that he wanted "Nett," the daughter, to go home with him for his wife to make a bargain with; that he never made a bargain with a girl to work for his wife; that he always let his wife make such bargains. The Holbrooks all consented to such an arrangement, but upon condition that defendant would bring the girl back the next day, to which condition the defendant consented. The defendant resided about five miles from Holbrook's. He took the girl with him in his wagon to his home, but when they arrived there they found no one at home. The defendant then said that his wife had probably gone to Mr. Finan's, a neighbor who lived near by. He however soon produced

a note in writing, purporting to be from his wife, but which was in fact written by himself, which stated that his wife had gone to Mr. Hanna's, (a neighbor who lived about seven miles from the defendant's house,) and asking that the defendant would come after her the next day. The defendant himself however had on that very same day, and before he went to Holbrook's, taken his wife and his two children to Mr. Hanna's. It would seem to have been about night when the defendant and the girl arrived at the defendant's house. And on that night the defendant and the girl staid alone at the defendant's house, slept together, and had sexual intercourse with each other. The next day the defendant took the girl back to her own home. We think that the trust reposed in the defendant by the father and mother of the girl, in confiding her to his care for the purpose that he might take her to his own home so that his wife could employ her as a hired girl in his own family, was such a trust as is fairly contemplated by the statute. It was very much like placing the girl in the defendant's family as one of the family, and reposing the confidence for her care and protection in the defendant himself as the head of the family.

The judgment of the court below will be affirmed.

All the Justices concurring.