## THE STATE OF KANSAS v. JAMES ANGEL.

1. MINOR CHILDREN — *Equal Guardians.* Under the constitution and laws of this state, the father and mother are the natural guardians of the persons of their minor children, and each parent equally so with the other. (*The State v. Jones,* 16 Kas. 608.)

2. INFANT CHILD, *Not Unlawfully Carried Away.* Where a wife separates from and leaves her husband, taking her two-year-old child, and the wife is assisted in leaving her husband by another person, and the child after such separation continues to be in the custody and under the control of the wife, *held,* that the person so assisting her to leave her husband is not guilty under the provisions of ?47 of the act regulating crimes, with unlawfully taking and carrying away the infant child, which the mother continues to retain in her care and possession.

### *Appeal from Elk District Court.*

ON the 2d day of May, 1889, the following information, omitting caption and verification, was filed in the district court of Elk county:

"I, the undersigned, county attorney of said county, in the name, by the authority and on behalf of the state of Kansas, give information that on the 8th day of March, 1889, in said county of Elk and state of Kansas, one James Angel did then and there unlawfully, feloniously, forcibly and fraudulently decoy, entice, take and carry away from one W. B. Willis, and from the residence of said Willis, in Elk county, state of Kansas, the infant child of said Willis, to wit, Hobert L. Willis, said child being then under the age of three years; and said James Angel did then and there maliciously, forcibly and fraudulently take and carry away said infant child as aforesaid from the state of Kansas to the Indian territory, with the intent then and there to detain and conceal said infant child from said W. B. Willis, the father thereof; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

Trial had May 7, 1889. W. B. Willis, the father of Hobert L. Willis, the infant alleged to have been unlawfully taken and carried away, testified upon the trial among other things as follows:

"I reside in Elk county; am a married man; have been

married nearly sixteen years; my wife's name is Etta Willis; she is living; we have five children; the oldest is fourteen, and the youngest, Hobert L. Willis, is two and a half years; on the 8th of March, 1889, I was at my home with my wife and children, and was then acquainted with the defendant James Angel; I have known him between two and three years; he has been residing in Elk county, near my place.

"Q. Do you remember seeing Mr. Angel on that day? A. Yes, sir.

"Q. Do you know whether Angel had a horse and buggy? A. Yes, sir; I guess he did.

"Q. Do you remember seeing his team and buggy at your house the evening of that day? A. Yes, sir.

"Q. What time in the evening? A. It was about four o'clock, I think.

"Q. Were they hitched there at your house? A. Yes, sir.

"Q. Where were you? A. I was standing in the field, plowing.

"Q. State whether Angel had frequently been at your house, and whether you and he were on friendly terms. A. Yes, sir.

"Q. State whether he was at your house again that day. A. Yes, sir; he came there I guess about 7 o'clock; at any rate, it was early in the evening.

"Q. Was it getting dark? A. Yes, sir; it was dark.

"Q. How did he come there that time? A. I don't know.

"Q. Did he say? A. No, sir; I don't think he did.

"Q. From any circumstances, do you know whether he had a buggy there with him? A. Yes, sir; from the indications that developed afterwards, I am inclined to think he was there with a team and buggy.

"Q. What took place that evening between you and your wife and Angel? A. Angel came in the east door; I was reading; the little five-year-old girl was sitting in the chair; I believe she was asleep at the time; I was reading when he came to the door; I think he knocked — I don't know; at any rate, he came in at the east door, and about that time, or perhaps a little after that, Mrs. Willis came in at the west door from the kitchen; Angel had a loaf of bread that he told Mrs. Willis that Mrs. Mitchell had sent; that she owed it to her, and had sent the loaf of bread over, and gave her to understand that is what she said. Mrs. Willis said, 'I had forgot Dolly owed me a loaf of bread,' and went with it and laid it on the bureau. Angel said that Harry had some kind

of a sore throat, (that is Mitchell's little boy,) and that they wanted her to come up there. I suppose it was nothing unusual for Mrs. Mitchell to send for her, and I suppose it was true that the child had a sore throat. She went and got an apron and commenced putting it on the little boy; he was asleep in the chair, but he woke up, and she says, 'Jim, you rock the baby,' or Hobert, I don't know which; I was sitting a little nearer the child than he was.

"Q. Who did she speak to when she said 'Jim'? A. She was speaking to him; she says, 'Jim, rock the baby'; I sat there and commenced rocking it myself; it had commenced to cry; she brought out an apron from the bed-room and commenced slipping it on him right over a dirty one, I think; he says, 'Never mind that; that will do to go up there.'

"Q. Who said that? A. Angel said that; he said, 'Never mind; that is good enough to go up there.' The child had been sick just previous to this, and Dr. Costello had made five or six visits to see him, and he had improved fast, and had then taken a hard cold; I objected to him going out in the night air; they overruled that objection; she had already said she could take good care of him—that I couldn't. She dressed herself and went out with the child, and that is the last I saw of her until Angel was brought back from the territory.

"Q. In what county and state was that? A. Elk county, state of Kansas."

Mrs. Etta Willis, the wife of W. B. Willis and the mother of Hobert L. Willis, the infant alleged to have been unlawfully taken and carried away, testified as follows:

"My husband's name is W. B. Willis; I have been married nearly sixteen years; was married at Eureka, in this state; since my marriage I have lived in Elk county; I have five children; my oldest is almost fifteen, and the youngest, Hobert L. Willis, will be three years old in September.

"Q. Do you remember where you were on or about the 8th of March? A. Yes, sir.

"Q. Where were you? A. I was at home.

"Q. In this county? A. Yes, sir.

"Q. Are you acquainted with the defendant, James Angel, in this case? A. Yes, sir.

"Q. How long have you been acquainted with him? A. Some three or four years.

"Q. Do you remember of seeing him on or about the 8th of March last? A. I do.

"Q. Where at? A. At our house.

"Q. What time in the day was it? A. I don't remember just exactly what time; it was in the afternoon.

"Q. Do you remember the circumstance of his coming to your house in the evening of that day? A. Yes, sir.

"Q. State all that happened and transpired there at that time, at your house that evening when Jim was there. A. He came there and said that Harry Mitchell had a sore throat, and says, 'I want you to go'; he said that Harry Mitchell had some kind of a sore throat, and he says, 'I want you to go up there'; I had told him to say this myself; I turned around and says to Mr. Willis, 'It is just as you say'; and he says, 'I have nothing to do with it—go if you want to'; and so I went to work and got ready, and got the baby ready, and when I woke the baby up to get him ready he (Mr. Willis) said he didn't believe I ought to take him out; I says, 'I believe I can take better care of him than you can, and I will wrap him up and take him'; he didn't say anything more about it; I wrapped the child up and took it.

"Q. At that time, or at any time, did the defendant here say anything about his apron? A. I put a clean apron on the baby; Jim didn't say anything about the apron.

"Q. Did Jim say anything about taking the child whatever? A. Then?

"Q. Yes. A. No, sir.

"Q. Did he at any time? A. Yes, sir; he did. I had asked him to take me away; I said I wanted to take the baby with me; he said I had better leave the baby; that I couldn't very well find work with the baby; I thought I couldn't hardly leave the baby; that I had better take the baby with me.

"Q. You had had some conversation with Jim before this time? A. Yes, sir.

"Q. When was that conversation? A. I can't tell just exactly when that conversation was.

"Q. Had you in that conversation informed Angel that you were going to leave Mr. Willis? A. Yes, sir; I had my mind made up a good while ago, that I was going to leave him.

"Q. You did leave him? A. Yes, sir.

"Q. Did you leave him of your own free will and accord? A. I left him of my own free will and accord.

"Q. Did this defendant have anything to do with enticing you? A. No, sir; I don't think he had. When I asked him

The State v. Angel.

if he wouldn't find a place for me to work I don't think he had anything to do with it.

"Q. Has this defendant ever had possession of that child? A. No, sir.

"Q. Has he ever exercised any control over that child? A. No, sir; I have taken care of the child myself.

"Q. You had it under your immediate control all the time? A. Yes, sir.

"Q. Has the child been to its father's house recently? A. Yes, sir.

"Q. Have you and your husband had any conversation in reference to the custody of this child? A. Yes, sir; I told him if he wanted the child he could have it.

"Q. When was that conversation? A. I can't remember.

"Q. About when? A. It has been two or three weeks ago.

"Q. Are you staying at his house now? A. No, sir.

"Q. Where are you staying? A. At Stillwell's.

"Q. Did you see your husband recently? A. He has been to see me a good many times.

"Q. You and he are friendly? A. Oh, yes."

The court instructed the jury as follows:

"Before you will be justified in finding this defendant guilty you must be satisfied from the evidence, beyond a reasonable doubt, that he did, in this county, on or about the 8th day of March last, fraudulently carry away from W. B. Willis a child under 12 years of age, to wit, Hobert L. Willis, with intent to detain said child from his parent, W. B. Willis; and if you have been satisfied beyond a reasonable doubt of these facts, then and in that event you ought to find this defendant guilty as charged in this information; but if the state has failed to so satisfy you, then you ought to acquit him.

"Section 47, chap. 31, of the laws of this state denounces this offense; and so far as this offense is concerned the section reads:

"'Every person who shall . . . take or carry away . . . any child under the age of 12 years . . . with intent to detain such child from its parent, shall upon conviction be punished by confinement and hard labor not exceeding five years, or imprisonment in the county jail not less than six months.'

"Upon reading this section you will discover that it is an offense for any person to fraudulently carry away any child under the age of twelve years with intent to detain such child

from its parent; and if you are satisfied from the evidence, as I have said before, beyond a reasonable doubt, that this defendant did fraudulently carry away this child, and that the child was under 12 years of age, with the intent to detain the child from its parent, Mr. Willis, then you ought to find this defendant guilty.

"It is not necessary in this case that this defendant should have himself taken and carried this child away fraudulently, as I have stated to you, but it will be sufficient if from all the evidence in this case you are satisfied he was present aiding, abetting or assisting another to carry this child away fraudulently, with the intent to deprive his parent of the society of the child.

"There must, in this case, be an intention to violate the law just as in any other criminal case; the criminal intent here is the intent to deprive the parent of the child, and if you believe from all the evidence in this case that this defendant, at the time when this child was taken away under the circumstances which are described by the witnesses in this case, intended to detain the child from its parent, if he had that thought in his mind, if he intended to detain the child or to conceal the child from its parent, then and in that event you ought to convict him. He cannot shield himself behind the kind of defense that he seeks to set up here, namely, that he didn't do this thing but that the woman did it; if you are satisfied that he was there present aiding and abetting and assisting the woman to·take this child away, with intent to conceal it or to detain it from its parent, Mr. Willis.

"You are the exclusive judges of the weight of the evidence, of the credibility of the witnesses, and of the facts proven, and it is for you to say what the intention of these people was concerning the taking away of this child, and what the intention of this defendant was, and what his intention was in aiding and abetting and assisting this woman to get away.

"This defendant is presumed to be innocent of the offense charged, and of every ingredient of the offense, until the contrary is made to appear to the entire satisfaction of the jury, and so long as any individual juror has any reasonable doubt in his mind as to the guilt of this defendant, such juror ought to refuse to convict him."

The jury returned a verdict against the defendant, finding him guilty as charged in the information. Thereupon the

defendant filed a motion in arrest of judgment, and also for a new trial. These motions were overruled. Subsequently the defendant was sentenced to be confined in the penitentiary of the state at hard labor for the period of one year, and judgment was also rendered against him for the costs of the prosecution. He complains of the sentence and judgment, and appeals to this court.

*A. M. Jackson*, for appellant.

*L. B. Kellogg*, attorney general, for The State.

The opinion of the court was delivered by

HORTON, C. J.: This was a criminal prosecution under § 47 of the crimes-and-punishments act. This section reads:

"Every person who shall maliciously, forcibly or fraudulently lead, take or carry away, or decoy or entice away, any child under the age of twelve years, with intent to detain or conceal such child from its parent, guardian, or other person having the lawful charge of such child, shall upon conviction be punished by confinement and hard labor not exceeding five years, or imprisonment in the county jail not less than six months."

The principal facts in the case are undisputed. On the 8th day of March, 1889, W.,B. Willis resided in Elk county, in this state, with his family, consisting of his wife and five children, the youngest of which was about two years old, and is the child described in the information. Upon that date Mrs. Etta Willis, the wife of W. B. Willis, left her husband, and with the assistance of the defendant was driven to the Indian Territory. She took with her to the Indian Territory her child, and the child has continued to be in her custody and under her control. She is its mother. The father and mother are the natural guardians of the persons of their minor children, and each parent equally so with the other. (Const., art. 15, § 6; *The State v. Jones*, 16 Kas. 608.)

As Mrs. Willis, the mother of the child, had the equal right with her husband, the father, to the actual care and control of the child, it is clear that she could not be punished

under the provisions of said § 47, for taking and carrying the child away from the father. If it be true that James Angel, the defendant, assisted her to leave her husband and in so doing assisted her in taking her child, he cannot be convicted under § 47, because he only assisted the mother of the child, who had the same right to the care and control of the child as the father. The mother had the lawful charge of the child all of the time, and neither the mother nor Angel is guilty of any criminal violation of said § 47.

The judgment of the district court must be reversed, and as the facts are undisputed the defendant will be discharged.

All the Justices concurring.