No. 48,201

STATE OF KANSAS, *Appellee,* v. AHMAD AL-TURCK, *Appellant.*

(552 P. 2d 1875)

Opinion filed July 23, 1976.

*Barry Albin,* of Kansas City, argued the cause and was on the brief for the appellant.

*Thomas L. Boeding,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* dsitrict attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Ahmad Al-Turck, a citizen of Iraq here as a student, was convicted of interference with parental custody and has appealed. He makes five contentions, four of which are without merit but one of which requires a reversal. That one is that under the undisputed facts, as disclosed by the state's evidence, he could not be found guilty of the offense charged.

That offense was a violation of K. S. A. 21-3422:

"Interference with parental custody is leading, taking, carrying away, decoying or enticing away any child under the age of fourteen (14) years, with the intent to detain or conceal such child from its parent, guardian, or other person having the lawful charge of such child."

The state's evidence disclosed that during the summer of 1974, the defendant and his wife Diana were involved in a divorce proceeding in Wyandotte county. Her petition requested permanent custody of their daughter Amalede, but no temporary custody

order was ever entered. Pending hearing the child remained with her mother, but defendant by oral agreement had unlimited visitation rights. On August 3, 1974, two days before the scheduled divorce hearing, defendant picked up the child on the pretense of taking her on a picnic, but instead boarded a plane and flew with her to his family home in Iraq. Based on this action defendant was charged with "carrying away" the child with intent to conceal her from her mother, who was alleged to be a parent having "lawful charge" of the child.

On August 6, 1974, a final divorce decree was entered giving Diana custody. Two to three weeks later defendant informed Diana of their whereabouts. Defendant later returned to this country and was arrested. Later still the child was returned to the custody of her mother.

The determinative issue is whether the mother had such "lawful charge" of the child as to make the father's exercise of custody a violation of the statute. We hold she did not.

It is the established law of this state that in the absence of a court order both parents have an equal right to the custody of their minor children. Kan. Const., Art. 15, § 6; K. S. A. 1975 Supp. 59-3002 (3) and 59-3003; *Allison v. Allison,* 188 Kan. 593, 597, 363 P. 2d 795.

A temporary custody order under K. S. A. 60-1607 (*c*), can cut off the right of a parent (*In re Peck,* 66 Kan. 693, 72 Pac. 265) but, as previously noted, no order was issued here. The mere filing of the divorce petition requesting custody was not in itself sufficient to extinguish the father's rights. See cases collected at 77 A. L. R. 317 *et seq.,* and especially *State v. Dewey,* 155 Ia. 469, 136 N. W. 533, where it was held that neither the father nor his assistant could be guilty of kidnapping a child from its mother, who had begun divorce proceedings, even though they obtained custody from her by falsely representing that the assistant was an officer of the court having a court order for such custody.

The issue presented here was squarely decided by this court in a case not cited by either party, *State v. Angel,* 42 Kan. 216, 21 Pac. 1075. There the defendant was convicted of kidnapping for aiding a mother in taking her daughter away from her husband, the child's father, in violation of G. S. 1868, ch. 31, § 47:

"Every person who shall maliciously, forcibly or fraudulently lead, take or carry away, or decoy or entice away, any child under the age of twelve years, with intent to detain or conceal such child from its parent, guardian or other

person having the lawful charge of such child, shall, upon conviction, be punished by confinement and hard labor not exceeding five years, or imprisonment in the county jail not less than six months."

The statute, it will be seen, contains elements substantially identical to those in our present 21-3422, *i. e.*, a taking of the child with "intent to detain or conceal such child from its parent, guardian, or other person having the lawful charge of such child." In reversing the conviction this court held:

". . . She took with her to the Indian Territory her child, and the child has continued to be in her custody and under her control. She is its mother. The father and mother are the natural guardians of the persons of their minor children, and each parent equally so with the other. (Const., art. 15, § 6; *The State v. Jones,* 16 Kan. 608.)

"As Mrs. Willis, the mother of the child, had the equal right with her husband, the father, to the actual care and control of the child, it is clear that she could not be punished under the provisions of said § 47, for taking and carrying the child away from the father. If it be true that James Angel, the defendant, assisted her to leave her husband and in so doing assisted her in taking her child, he cannot be convicted under § 47, because he only assisted the mother of the child, who had the same right to the care and control of the child as the father. The mother had the lawful charge of the child all of the time, and neither the mother nor Angel is guilty of any criminal violation of said § 47." (*Id.* at 222-3.)

So here, there being no court order the defendant had a right to the custody of his child equal to that of the mother, and the exercise of that right could not make him subject to a criminal charge. The conviction is reversed, and since "it appears that no crime has been committed" (K. S. A. 22-3607), the defendant is discharged.

APPROVED BY THE COURT.