**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 5, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHAEL MUNDAY,

      Plaintiff-Appellant,

v.

JIMMY JOHNSON;
ROY MITCHELL,

      Defendants-Appellees.

No. 07-3088
(D.C. No. 05-CV-1278-WEB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **BALDOCK**, and **EBEL**, Circuit Judges.

---

Michael Munday brought a claim under 42 U.S.C. § 1983 against

defendants for violation of his Fourth Amendment right to be free from an

unreasonable seizure. The district court held that defendants were entitled to

qualified immunity and granted summary judgment in their favor. Mr. Munday

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

filed a timely appeal, contending that the district court erred in concluding that defendant Johnson had probable cause to arrest him.[1] We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## *Background*

This is a case of poor communication between the estranged parents of a minor child. The mother enlisted the assistance of the police in locating the child, who she claimed was not returned to her by the father at the designated time, in violation of a court order. The father was arrested, but not ultimately prosecuted. He then filed suit against two police officers, seeking damages for a false arrest without probable cause. The material facts are not in dispute.

Defendant Johnson is a detective with the Wichita Police Department, assigned to the department's Exploited and Missing Child Unit. Defendant Mitchell is a lieutenant in the same department and also Detective Johnson's supervisor. Mr. Munday's Fourth Amendment claim stems from his arrest by Detective Johnson on June 1, 2004, on a misdemeanor charge for violation of a Kansas statute that prohibits interference with parental custody, which is defined as "leading, taking, carrying away, decoying or enticing away any child under the

---

[1] Mr. Munday argues in his appeal brief that defendant Johnson is not entitled to dismissal based on qualified immunity. He makes no argument for reversal of the district court's dismissal of his claim against defendant Mitchell. Therefore, we deem that argument waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (holding issue waived when not raised in opening appellate brief).

age of 16 years with the intent to detain or conceal such child from its parent." Kan. Stat. Ann. § 21-3422(a).

Mr. Munday and Catherine Remmert are the natural parents of, and have joint legal custody of, a minor child we will refer to as "MRM." Mr. Munday's visitation time with MRM is defined by a court order entered in October 2003 (hereafter "Journal Entry"). According to the Journal Entry, Mr. Munday has visitation with MRM on alternating Saturdays and every Sunday. His visitation on Sundays extends "until Monday when he shall take the child to school." Aplt. App. at 96. The Journal Entry provides that the parents are to exchange the child at designated police substations. It states as follows regarding holidays: "The parties shall alternate the Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving, Christmas Eve, Christmas Day and New Years Eve holidays." *Id.* at 97.

In late April 2004, Detective Johnson was assigned a case in which Mr. Munday had reported possible child abuse, based upon MRM having minor bruising after a visit with Ms. Remmert. The officer taking the report had no contact with the child and indicated that Mr. Munday had reported "very light bruising." *Id.* at 34. Detective Johnson noted in his report that there was no evidence of criminal intent to abuse a child. On May 14, 2004, Mr. Munday's girlfriend contacted Detective Johnson, inquiring about the status of Mr. Munday's reports of child abuse. Detective Johnson responded that

-3-

Mr. Munday should contact him directly. He then researched the police department records and learned that Mr. Munday had made six reports involving minor bruising or other abuse of MRM since April 18, 2004. No criminal charges had been filed as a result of Mr. Munday's abuse reports. Detective Johnson also found eleven reports by Mr. Munday of missed or late custody exchanges involving Ms. Remmert since June 2003.

Detective Johnson asked Ms. Remmert to come to the police station with MRM on May 18, 2004, for an interview regarding Mr. Munday's abuse complaints. Detective Johnson asked a female officer to examine MRM. She reported that MRM was "a very happy and seemed to be [a] very bright young child with no injuries that would constitute child abuse." *Id.* at 35. Ms. Remmert told Detective Johnson that she did not know why Mr. Munday was making allegations of child abuse. She commented that his parents did not understand his actions and were concerned that he was "getting close to going over the edge." *Id.* She described an incident a week earlier when MRM was at a party at Ms. Remmert's mother's house when police officers arrived to check for child abuse. Detective Johnson confirmed through police department records that officers were sent to the grandmother's address on a report by Mr. Munday that MRM was being abused. During their meeting on May 18, Ms. Remmert gave Detective Johnson a copy of the Journal Entry containing the visitation

provisions.  She denied missing any custody exchanges, but admitted that she may have been late.

Detective Johnson asked Mr. Munday to come to the station for an interview on May 20, 2004.  Mr. Munday indicated that he believed MRM was being abused based upon the way she was acting, her complaints of pain, and her nightmares.  When asked to be more specific, Mr. Munday mentioned one day when MRM said that her legs were throbbing.  Detective Johnson informed Mr. Munday that none of his abuse allegations were substantiated and at that point he had no reason to believe that Ms. Remmert or anyone else was abusing MRM.  The interview became heated when Detective Johnson accused Mr. Munday of making false claims of child abuse to retaliate against Ms. Remmert.  He gave Mr. Munday copies of the state statute on child abuse and city ordinances on making false police reports.

Four days later, on Monday, May 24, Mr. Munday returned to the police station with MRM sometime after 2:30 in the afternoon.  He met with Detective Johnson and a social worker named Michelle Bargdill.  He admitted that he had not taken MRM to school that day and that he had instead taken her to the doctor. He claimed that he was unable to call Ms. Remmert because of a protection from abuse order.  He indicated that he was planning to take MRM to school from the police station.  Detective Johnson believed that Mr. Munday's failure to take MRM to school was in violation of the visitation terms in the Journal Entry.  He

also noted in his report that he asked Ms. Remmert about a protection from abuse order and she responded that, although there had been such an order, it was no longer in effect.

Mr. Munday informed Detective Johnson and Ms. Bargdill that he took MRM to the doctor that afternoon because he suspected she had been abused. He described various different complaints by MRM beginning with a nightmare on Sunday night. Mr. Munday stated that on Monday morning MRM said she didn't want to use the bathroom or go to school, and that she wanted to see her mother. He said that he saw bruising on the child's knees and shin, and that she complained of pain on one side of her face, where he saw what looked like another light bruise. According to Mr. Munday, MRM did not have much appetite and she was also complaining that her mouth hurt and that her bottom had hurt the week before. He said that he tried to reach Ms. Bargdill and then made a doctor appointment for 2:30 that afternoon.

Mr. Munday said that he asked the doctor to check MRM for any abuse, including sexual abuse. He told Detective Johnson and Ms. Bargdill that the doctor examined MRM and found nothing abnormal or different from previous examinations and that the doctor did not feel that there had been any abuse. According to Mr. Munday, the doctor directed him to come to the police station to make a report. Detective Johnson noted in his report that, as a mandated reporter, the doctor would have to make a report himself if he saw any signs of abuse.

-6-

Detective Johnson again concluded that Mr. Munday was making a false report. He informed Mr. Munday that no doctor or police officer had seen any sign of abuse and he warned him against continuing to use these allegations to keep MRM away from school and from Ms. Remmert.

The next contact Detective Johnson had with MRM's parents was a week later on Tuesday, June 1, 2004. Ms. Remmert called Detective Johnson at approximately 9:00 a.m. and reported that Mr. Munday had failed to return MRM to her on the previous day at 11:00 a.m. at the west police substation. Monday, May 31, had been the Memorial Day holiday. Ms. Remmert said that Mr. Munday had not contacted her or MRM's school and that she did not know where the child was. After speaking to Ms. Remmert, Detective Johnson consulted with his supervisor, Lieutenant Mitchell, who authorized him to send a sheriff's officer to Mr. Munday's house. At approximately 10:30 a.m., the sheriff's officer reported that no one was at Mr. Munday's house. Next, Ms. Bargdill called the doctor's office where Mr. Munday had taken MRM the week before.[2] She was told by someone there that MRM had an appointment at 10:00 a.m. and that Mr. Munday and MRM had just left the office, possibly en route to MRM's school. Detective

---

[2]     It is not clear from the evidence why Ms. Bargdill called the doctor's office. According to Detective Johnson, he asked her to do so. But Mr. Munday asserts that he had left Ms. Bargdill a message indicating he had taken MRM to the doctor.

Johnson next contacted Officer Kent Bauman, who is responsible for cases involving missing and abducted children, and briefed him on the case.

Detective Johnson testified that he made the decision to arrest Mr. Munday before he left the police station. At about 2:00 p.m., Detective Johnson, Officer Bauman, and Ms. Bargdill arrived at Mr. Munday's house, where they were met in the driveway by Mr. Munday and his girlfriend. Detective Johnson asked Mr. Munday where MRM was and he responded that he had taken her to school after taking her to the doctor. Detective Johnson asked Officer Bauman to call MRM's school to verify that she was there. The school initially responded that MRM was not there. Because Mr. Munday was adamant that MRM was at school, Officer Bauman called a second time and the school did confirm that MRM was there. Detective Johnson placed Mr. Munday under arrest at approximately 2:30 p.m. Mr. Munday was in the officers' presence the entire time that they were outside his house. There is no evidence that the officers asked Mr. Munday additional questions, but there is also no evidence that they prevented him from making any additional statements.

Mr. Munday was not prosecuted. He filed this action against defendants, asserting that he was arrested without probable cause in violation of the Fourth Amendment. The district court granted defendants' summary judgment motion, concluding that they were entitled to qualified immunity from suit because Detective Johnson had probable cause to arrest Mr. Munday based upon

Ms. Remmert's report on June 1, 2004, that he had failed to return MRM by 11:00 a.m. the previous day; Mr. Munday's previous violation of the Journal entry; and his unsubstantiated reports of child abuse.

*Discussion*

Section 1983 provides that "[e]very person" who acts under color of state law to deprive another of constitutional rights "shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. "But the doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007) (quotation and brackets omitted). "We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Id.* at 1190. "However, we review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (quotation and brackets omitted).

> When the defendant asserts qualified immunity as a basis for summary judgment, we must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right. If the plaintiff meets this burden, we then consider whether the law was clearly established at the time of the defendant's actions. In order for the law to be considered clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly

established weight of authority from other courts must have found the law to be as the plaintiff maintains. If either of these requirements is not met, the defendant is entitled to qualified immunity and summary judgment is appropriate.

*Robertson*, 500 F.3d at 1191 (quotation and citations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007) (quotation omitted).

"When a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." *Robertson*, 500 F.3d at 1191. "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero*, 45 F.3d at 1476 (quotation omitted). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id.* (quotations omitted).

Mr. Munday makes three claims of error in this appeal: (1) that Detective Johnson did not have probable cause to arrest him based upon Ms. Remmert's report that he had failed to return MRM at 11:00 a.m. on Monday, May 31, 2004; (2) that Detective Johnson's investigation was constitutionally unreasonable; and

-10-

(3) that Detective Johnson did not have probable cause because he knew or should have known that the Journal Entry was not an enforceable order upon which an arrest could be based.

### A. Probable Cause Based Upon a Victim's Statement

A police officer can base a probable cause determination upon a witness's statement. *See Romero*, 45 F.3d at 1476. Moreover, "the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, is appropriately relaxed if the informant is an identified victim or ordinary citizen witness." *Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985). Absent special circumstances suggesting that a victim-witness is not credible, corroboration is not essential and a police officer should be permitted to assume he is dealing with a trustworthy person. *See United States v. Patane*, 304 F.3d 1013, 1017 (10th Cir. 2002), *reversed on other grounds*, 542 U.S. 630 (2004); *see also United States v. Gagnon*, 635 F.2d 766, 768 (10th Cir. 1980) ("We have long subscribed to the rule that an affidavit need not set forth facts of a named person's prior history as a reliable informant when the informant is a citizen/neighbor eyewitness with no apparent ulterior motive for providing false information."). In a § 1983 action, the burden is on the plaintiff to show that the witness's statement "did not constitute reasonably trustworthy information sufficient to lead a prudent police officer to conclude that Plaintiff [committed an offense]." *Romero*, 45 F.3d at 1476 & n.1.

-11-

Here, Detective Johnson received a statement from Ms. Remmert, who he had found to be credible in the past, indicating that Mr. Munday was nearly twenty-four hours late in returning MRM to her. Mr. Munday points to no evidence indicating that Detective Johnson was aware that Ms. Remmert had previously been untruthful, out of personal animosity or otherwise. *See Patane*, 304 F.3d at 1017 (noting lack of evidence that victim had lied or threatened to lie). Detective Johnson obtained partial corroboration of Ms. Remmert's report by confirming that Mr. Munday had not taken MRM to school that morning. He was also aware that only a week earlier Mr. Munday had failed to take MRM to school after a Sunday overnight visit. Detective Johnson believed this prior incident was a violation of the visitation terms of the Journal Entry.[3] Thus, he based his probable cause determination, in part, on his knowledge of Mr. Munday's previous violation.

Nonetheless, Mr. Munday argues that Ms. Remmert's report to Detective Johnson did not support probable cause. He asserts that Detective Johnson could

---

[3] We acknowledge some ambiguity in the Journal Entry with respect to Mr. Munday's obligation to take MRM to school following a Sunday overnight visit. It does not specify a time for taking the child to school. Detective Johnson testified that he understood the Journal Entry to mean that Mr. Munday was supposed to take MRM to school at the beginning of the school day. Aplt. App. at 56. Mr. Munday does not contend on appeal that this interpretation of the Journal Entry is wrong, nor does he argue on appeal that Detective Johnson was incorrect in determining that he had previously violated the terms of the Journal Entry.

not rely upon her "bald allegation" in light of the terms of the Journal Entry. Aplt. Br. at 6. But the Journal Entry provides only that Mr. Munday and Ms. Remmert will alternate holidays with MRM. It does not indicate which parent was to have MRM on Memorial Day in 2004. Thus, the terms of the Journal Entry did not contradict Ms. Remmert's statement, such that Detective Johnson could not reasonably rely upon it. Mr. Munday alternatively asserts that it was not reasonable for Detective Johnson to resolve the ambiguity in the Journal Entry in favor of one party in a domestic dispute. But we have rejected the view that uncorroborated allegations arising from domestic disputes are insufficient to establish probable cause. *See Patane*, 304 F.3d at 1016-17 ("We find no basis for the suggestion that domestic violence victims are undeserving of the presumption of veracity accorded other victim-witnesses.").

Mr. Munday contends further that Detective Johnson's finding of probable cause based upon Ms. Remmert's statement was unreasonable because, at the time of his arrest, the officers knew that MRM was not in danger, that she had been taken to her school, and therefore the child had effectively been released to Ms. Remmert's custody. But none of these facts contradicted Ms. Remmert's report that Mr. Munday had failed to return MRM to her the day before.

Nor was the tardiness of Ms. Remmert's report sufficient to vitiate probable cause. In *Patane*, we acknowledged that a victim's delay in making a report could cast some doubt upon her veracity, but we concluded that "that fact alone

-13-

was [not] sufficient to require the officers to treat her complaint with special skepticism." 304 F.3d at 1017. Here, a reasonable officer could rely upon Ms. Remmert's report despite her delay in making it. It is not unreasonable to infer that she became concerned enough to contact the police when Mr. Munday not only kept MRM an extra day, but also failed to take her to school on the following day.

Finally, Mr. Munday argues that it was not unreasonable *for him* to conclude under the circumstances that he had rightful custody of MRM on Memorial Day. He points to evidence of a fax communication from Ms. Remmert's counsel to his counsel the weekend before, regarding which parent would have MRM for the holiday,[4] as well as evidence of his two telephone conversations with Officer Taylor from the west substation on May 31. Regarding those telephone calls, he stated as follows in his affidavit:

> The telephone calls were to the effect of requesting that I provide information to them that I was entitled to custody of my child and that the natural mother was inquiring of her whereabouts. I shared the information that I could from the Journal Entry with the police officer who indicated that he would talk to the Petitioner and natural mother of the child and that he would take care of everything. I never received another call and believed then, as I do now, that Memorial Day, May 31, 2004 was a Holiday that I was entitled to have custody of my child.

---

[4] Mr. Munday's citation to this evidence is curious because he contends earlier in his brief that it has "little or nothing to do with the case at bar." Aplt. Br. at 3. We agree.

-14-

Aplt. App. at 81. But Mr. Munday presented no evidence that Detective Johnson was aware of any of these facts. The pertinent question is not the reasonableness of Mr. Munday's belief, but whether a reasonable officer, based upon the facts and circumstances *within his knowledge*, could conclude that an arrestee had committed an offense. *See Romero*, 45 F.3d at 1476. There is no dispute that Ms. Remmert failed to provide Detective Johnson with these additional facts when she made her report on June 1. Admittedly, her report was incomplete. And perhaps as a result of her omissions, in the event of a future report by Ms. Remmert, Detective Johnson would have cause to doubt her credibility. But under the facts and circumstances known to him at the time of Mr. Munday's arrest–including Detective Johnson's previous dealings with Ms. Remmert in which he found her credible, Mr. Munday's previous violation of the Journal Entry, and his numerous unsubstantiated claims of child abuse–we cannot conclude that no reasonable officer could have found probable cause to exist based upon Ms. Remmert's report.[5]

---

[5] Mr. Munday also contends that Detective Johnson was or should have been aware that he was prohibited from contacting Ms. Remmert because of a protection from abuse order. He does not explain why this fact, if true, precluded a finding of probable cause. In any event, we agree with the district court that Mr. Munday presented no evidence of such an order. The final order of protection that he submitted in response to defendants' summary judgment motion does not preclude him from contacting Ms. Remmert. *See* Aplt. App. at 88-90. And the Journal Entry explicitly provides that the parties shall consult with one another regarding numerous issues related to MRM's welfare. *Id.* at 96.

## B. Reasonableness of Investigation

Mr. Munday argues alternatively that Detective Johnson's investigation was constitutionally unreasonable. He notes correctly that the probable cause standard "requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Romero*, 45 F.3d at 1476-77. We emphasize that "the court should ask whether the [officer] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

Mr. Munday asserts that witnesses were readily available–specifically Officer Taylor at the west substation. He contends that Detective Johnson knew, based upon Ms. Remmert's report, that the west substation was the designated place for exchanging MRM on May 31, yet he unreasonably failed to interview officers there to determine what had occurred with respect to the exchange. But we have already held that Detective Johnson was not constitutionally required to corroborate Ms. Remmert's report, absent special circumstances putting her credibility in doubt. *See Patane*, 304 F.3d at 1017. And, lacking the further specific information regarding Mr. Munday's and Ms. Remmert's contacts with Officer Taylor the day before, we cannot conclude that every reasonable officer would have made further inquiry at the west substation before making an arrest.

-16-

Mr. Munday also contends that Detective Johnson's pre-arrest investigation was unreasonable because he did not tell Mr. Munday why he was being arrested, nor did he inquire whether Mr. Munday had a reasonable belief regarding his right to have custody of MRM on Memorial Day. Although it is good practice for an officer to inform an arrestee of the reason for his arrest, there is no constitutional requirement to do so. *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004). Nor is there evidence that Mr. Munday informed Detective Johnson of his side of the story, or that Detective Johnson prevented him from doing so.

But even if Mr. Munday had expressed his innocence to Detective Johnson, it would not vitiate probable cause based upon Ms. Remmert's report. The arrestees in *Romero* and *Patane* each denied that they had committed any offense, yet we held that the officers in those cases nonetheless had probable cause to arrest based upon the witnesses'/victim's reports. *See Romero*, 45 F.3d at 1477-78 ("Defendant['s] failure to investigate Plaintiff's alleged alibi witnesses did not negate the probable cause for the warrantless arrest in the absence of a showing that Defendant['s] initial probable cause determination [based upon other witnesses' statements] was itself unreasonable."); *Patane*, 304 F.3d at 1018 (noting that the possibility there was an innocent explanation for the arrestee's action did not defeat probable cause). As we observed in *Romero*, police officers are not required to forego making an arrest based on facts supporting probable cause simply because the arrestee offers a different explanation. 45 F.3d at 1478

n.3.  "[P]robable cause does not require certainty of guilt or even a preponderance of evidence of guilt, but rather only reasonably trustworthy information that would lead a reasonable person to believe an offense was committed."  *Patane*, 304 F.3d at 1018.

## C.  Enforceable Order

In his final argument, Mr. Munday contends that "there is arguably no Journal Entry with regard to the Memorial Day Holiday and therefore no Court order.  Lacking a Court order, Mr. Munday could not be convicted of interference with custody.  [Detective Johnson] was in a position to know this."  Aplt. Br. at 9.[6]  Mr. Munday relies on *State v. Al-Turck*, 220 Kan. 557, 559 (1976), in which the Kansas Supreme Court reversed a conviction under Kan. Stat. Ann. § 21-3422.  The court reasoned that, absent a custody order, the defendant father had an equal right to custody of the minor children and could not be convicted of interference with parental custody under § 21-3422.  *Id.*  Mr. Munday does not assert that there is no custody order in this case.  Nor is the Journal Entry entirely silent with respect to the parents' rights regarding custody of MRM on the designated holidays, including Memorial Day.  His argument appears to be that, because the

---

[6]      It appears that the district court misconstrued this argument as a contention that probable cause was lacking because Mr. Munday was factually innocent of the charge.  To the extent Mr. Munday makes that argument, we agree that the arrestee's later-established innocence is not relevant to the probable cause determination.  *See Atkins v. Lanning*, 556 F.2d 485, 487 (10th Cir. 1977).

-18-

Journal Entry does not state which parent was to have custody of MRM specifically on May 31, 2004, it is not an enforceable order subject to violation under § 21-3422. He cites no case law in support of this proposition. We decline to hold that the Journal Entry is inapplicable or unenforceable with respect to a violation of § 21-3422 because its terms must be applied to the particular facts in order to determine which parent was entitled to have custody of MRM on a specific holiday in a given year.

### *Conclusion*

We cannot conclude, based upon the totality of the circumstances as they would have appeared to a prudent, cautious, and trained officer, that no reasonable officer could have found there was probable cause to arrest Mr. Munday. He has failed to show that Detective Johnson violated a constitutional right. We therefore affirm the district court's holding that Detective Johnson is entitled to qualified immunity.

The judgment of the district court is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge


-19-