Kathryn Marie (Cape)
HEMPE, Appellant,

v.

Randolphe J. CAPE, Respondent.

No. 13903.

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 19, 1985.

Eugene B. Overhoff, Cuba, for appellant.

C. William Lange, Cuba, for respondent.

CROW, Presiding Judge.

Kathryn Marie Hempe, formerly Kathryn Marie Cape ("Kathryn"), appeals from a judgment entered August 14, 1984, by the Circuit Court of Crawford County, Missouri, modifying the child custody provisions of a decree of dissolution of marriage entered August 30, 1977, by the same Court. The 1977 decree dissolved Kathryn's marriage to her then-husband, Randolphe Jay Cape ("Randolphe"), and, among other things, awarded primary custody of the parties' only child, Miranda Dawn Cape ("Miranda"), to Kathryn. Randolphe was granted the right "to visit the child at reasonable times and further subject to having the child visit with him at the residence of the paternal grandparents on the fourth Saturday of each month from 8:00 a.m. to 5:00 p.m."

The 1984 judgment, from which Kathryn appeals, awards Randolphe primary custody of Miranda, subject to Kathryn's right "to have temporary custody of Miranda ... from 12:00 noon on June 15 through 12:00 noon on August 15 of each year and from 12:00 noon on December 26 through 12:00 noon on January 2 of each year."

Kathryn maintains that the Circuit Court of Crawford County ("the Missouri court") did not have jurisdiction to enter the 1984 judgment, or, if it had jurisdiction, it should not have exercised it. Kathryn further asserts that the Missouri court erred in failing to award her "costs, attorney's fees, and travel expenses."

The 1984 judgment was entered after an evidentiary hearing; however, Kathryn has filed no transcript of that hearing. She explains, through her attorney, that "in light of the great expense [she] incurred in coming to Missouri and further jeopardizing their employment [she] felt she could not afford the expense of the transcript." Consequently, the record on appeal consists solely of the "legal file." Rule 81.12(a), Missouri Rules of Civil Procedure (16th ed. 1985).

█ Inasmuch as we have no transcript, we must, in ferreting out the facts pertinent to the jurisdictional issues, look to the pleadings to see what facts are alleged by one party and admitted by the other, and also look to the parties' briefs. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appeared in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *Hammack v. White*, 464 S.W.2d 520, 522[4] (Mo.App.1971).

Utilizing the above process, we learn that Miranda was somewhere between six months and one year old when the 1977 decree was entered. Some time thereafter, Kathryn married her present husband, and, in August of 1980, she and he moved to Florida, taking Miranda with them.

On July 2, 1984, Kathryn filed in the Circuit Court of Volusia County, Florida ("the Florida court"), a "Petition for Modification of Final Judgment," alleging that she and Miranda had been residents of New Smyrna Beach, Florida, since August 4, 1980, and that Miranda's "home state" is Florida. Invoking the jurisdiction of the Florida court under "§ 61.1302—61.1348, F.S. (1983), the 'Uniform Child Custody

Jurisdiction Act,'" Kathryn prayed for modification of the 1977 decree by changing Randolphe's temporary custody rights "so as to specify a period of twelve days per summer, rather than one day per month during a calendar year." The reason for the modification, as explained in Kathryn's petition, was that Randolphe's mother "demands extensive visitation rights, substantially in excess of those specified in the [1977] decree."

On July 9, 1984, by certified mail delivered in Steelville, Missouri, Randolphe received a copy of Kathryn's petition, together with a notice that the matter would be heard in the Florida court at 9:00 a.m., August 20, 1984.

On July 25, 1984, Randolphe initiated the instant proceeding in the Missouri court by filing two motions: a "Motion to Modify Child Custody of [Kathryn], or in the Alternative, to Modify Visitation of [Randolphe]," and a "Motion for Temporary Custody Pendente Lite."

Randolphe's motion to modify custody alleged that Kathryn had continually refused to allow him reasonable visitation with Miranda while she had been in Florida, or to return Miranda to Missouri. Randolphe prayed that the 1977 decree be modified by awarding him primary custody of Miranda or, in the alternative, certain specified periods of temporary custody each year.

Randolphe's motion for temporary custody pendente lite prayed for custody of Miranda during the pendency of Randolphe's action for modification, alleging that Miranda "is now physically within the jurisdiction of this Court." This allegation was evidently based on the fact that a few days prior to July 25, 1984, Randolphe had brought Miranda from Florida to Missouri for the ostensible purpose of visitation.

As best we can determine, a summons, accompanied by copies of Randolphe's motions, was served on Kathryn in Edgewater, Florida, on August 1, 1984, by certified mail.

On August 6, 1984, Kathryn filed in the Missouri court a separate motion to dismiss each of Randolphe's motions. Kathryn's motions asserted that the Missouri court lacked jurisdiction under the Uniform Child Custody Jurisdiction Act (§§ 452.440 to 452.550, RSMo 1978, as amended) in that at the time of the filing of Randolphe's motions, and for four years immediately prior thereto, Florida was the home state of Kathryn and Miranda as defined in § 452.-445(4), RSMo Cum.Supp.1983.[1] Therefore, argued Kathryn, the Missouri court was without jurisdiction under § 452.450.1(1), RSMo 1978.[2]

---

**1.** Section 452.445(4), RSMo Cum.Supp.1983, provides, in pertinent part:

"'Home state' means the state in which, immediately preceding the filing of custody proceeding, the child lived with ... a parent ... for at least six consecutive months.... Periods of temporary absence of any of the named persons are counted as part of the six-month ... period;".

**2.** Section 452.450, RSMo 1978, provides:

"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state:
(a) Is the home state of the child at the time of commencement of the proceeding; or
(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:
(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and
(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and:
(a) The child has been abandoned; or
(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or
(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine

Furthermore, said Kathryn, even if the Missouri court had jurisdiction, it should not exercise such jurisdiction in view of § 452.465.1, RSMo 1978,[3] in that at the time Randolphe filed his motions in the Missouri court, Kathryn's modification proceeding was already pending in the Florida court. Kathryn's motions to dismiss specifically identified and described the modification proceeding she had commenced in the Florida court, and pointed out that Randolphe had been served in the Florida proceeding by certified mail on July 9, 1984, 16 days before he commenced the instant action in the Missouri court.

As additional grounds for dismissal, Kathryn's motions asserted that the Missouri court should decline to exercise its jurisdiction because (a) it is an inconvenient forum, § 452.470.1, RSMo Cum.Supp.1983, (b) Randolphe, in bringing Miranda to Missouri and commencing this proceeding immediately thereafter, engaged in "reprehensible conduct," § 452.475.1, RSMo 1978, and (c) Randolphe, without Kathryn's consent, improperly retained Miranda in Missouri after a visit or other temporary relinquishment of physical custody, § 452.475.2, RSMo 1978.

Kathryn's motions to dismiss Randolphe's motions were heard in the Missouri court the same day they (Kathryn's motions) were filed, August 6, 1984. According to the docket sheet, Randolphe appeared in person and with counsel, and Kathryn appeared by counsel. Although not reflected in the docket entry, it is inferable that Kathryn appeared in person at this hearing. The judgment of the Missouri court (of which more later) recites that Kathryn appeared in person and by counsel at the August 6 hearing, and, as noted earlier, Kathryn, in one of her assignments of error, asserts that the Missouri court erred in failing to award her "travel expenses" as authorized by § 452.470.6, RSMo Cum.Supp.1983, and § 452.475.3, RSMo 1978. It is reasonable to assume that Kathryn would not claim travel expenses unless she had personally attended the August 6 hearing.

Be that as it may, the docket sheet shows that Kathryn's motions to dismiss were "taken under submission" at the August 6 hearing, and that the judge announced that Randolphe's motion to modify would be tried August 13, 1984.

On August 13, 1984, Randolphe appeared in the Missouri court in person and with counsel. Kathryn appeared by counsel, but not in person.[4] Randolphe presented evidence, after which Kathryn's motions to dismiss Randolphe's motions were denied. Kathryn, through counsel, presented no evidence. Judgment was thereafter entered modifying the 1977 decree, as heretofore recounted.

Kathryn's first assignment of error is that the Missouri court lacked jurisdiction to hear and determine Randolphe's mo-

---

the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

3. Section 452.465.1, RSMo 1978, provides:

"A court of this state shall not exercise its jurisdiction under sections 452.440 to 452.550 if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with sections

452.440 to 452.550, unless the proceeding is stayed by the court of that other state for any reason."

4. Kathryn's failure to attend the trial in person is, of course, unexplained in the pleadings, and it is likewise unexplained in the briefs. The Missouri court's judgment includes a finding that on August 11, 1984 (two days before trial), Kathryn, aided by her husband, "physically, and by force, removed [Miranda] from [Randolphe's] custody during said visitation and during the pendency of this cause of action." There being no transcript, no evidence supporting that finding is before us, and, as there is no contention by Kathryn that the physical removal of Miranda from Missouri two days before trial divested the Missouri court of jurisdiction *if jurisdiction then existed,* we need not concern ourselves with that incident.

tions. Kathryn argues that Missouri was not Miranda's home state at the time of the commencement of Randolphe's modification proceeding, nor had Missouri been Miranda's home state within six months before commencement of that proceeding. Therefore, says Kathryn, the Missouri court could not assert jurisdiction under § 452.450.1(1), RSMo 1978.[5]

Randolphe argues that Florida cannot be Miranda's home state because of § 452.377, RSMo Cum.Supp.1984.[6] Apparently, Randolphe's theory is that if a custodial parent removes a child from Missouri in violation of § 452.377, Missouri continues to be the child's "home state," regardless of how long the child is gone from Missouri. Randolphe cites no authority in support of that hypothesis.

Moreover, § 452.377 did not exist when Kathryn left Missouri with Miranda and established residence in Florida in 1980. What is now § 452.377 originated as subsection 3 of § 452.375, S.B. 468, Laws 1982, p. 641, enacted during the Second Regular Session of the Eighty-First General Assembly, which convened January 6, 1982, and adjourned May 15, 1982. The act took effect August 13, 1982. Mo. Const. art. III, § 29 (1945, amended 1970). The 1982 version was replaced by subsection 6 of § 452.375, H.S.H.C.S.S.S. No. 2 S.C.S.S.B. 94, Laws 1983, p. 783. The 1983 version was, in turn, replaced by subsection 6 of § 452.375, H.C.S.H.B. 1513, Laws 1984, pp. 732–33. That subsection was removed from § 452.375 by the Revisor of Statutes and renumbered § 452.377 for codification in RSMo Cum.Supp.1984.

Statutes are generally presumed to operate prospectively unless the legisla-

tive intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication. *Department of Social Services v. Villa Capri Homes, Inc.,* 684 S.W.2d 327, 332[2] (Mo. banc 1985); *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 34[3] (Mo. banc 1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). We find neither express language nor necessary or unavoidable implication in § 452.377, RSMo Cum. Supp.1984, or its predecessors, that it was meant to operate retroactively. Accordingly, we hold that § 452.377 supplies no reason why Florida could not become the home state of Miranda after she began residing there in August, 1980.

We take judicial notice, § 490.080, RSMo 1978; Rule 55.21(b), Missouri Rules of Civil Procedure (16th ed. 1985); *Robinson v. Gaines,* 331 S.W.2d 653, 655[4] (Mo.1960), that Florida adopted its own version of the Uniform Child Custody Jurisdiction Act effective October 1, 1977. 9 U.L.A. 111 (1979). The Florida Act, hereafter referred to as "Florida UCCJA," is codified as §§ 61.1302–.1348, Fla.Stat.Ann. (West 1985).

Under § 61.1306(5), Florida UCCJA, "home state" means the state in which the child, "immediately preceding the time involved, lived with ... a parent ... for at least 6 consecutive months...." Periods of temporary absence are counted as part of the 6-month period.

Under § 61.1308(1)(a)1., Florida UCCJA, a court of that state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if

---

5. Section 452.450, RSMo 1978, appears verbatim in footnote 2, *supra.* "Home state" is defined by § 452.445(4), RSMo Cum.Supp.1983, quoted in pertinent part in footnote 1, *supra.*

6. Section 452.377, RSMo Cum.Supp.1984, provides:
   "A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with

the written consent of the parties with custody or visitation rights. Where the noncustodial person has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. Violation of a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree."

Florida is the home state of the child at the time of commencement of the proceeding.

■ The facts established by the pleadings and briefs make it evident that Florida, not Missouri, was Miranda's home state at the time Kathryn filed her petition for modification in the Florida court. We therefore agree with Kathryn that the Missouri court could not assert jurisdiction in the instant case under § 452.450.1(1), RSMo 1978. That conclusion, however, does not dispose of Kathryn's first assignment of error.

As an alternative response to Kathryn's contention that the Missouri court did not have jurisdiction to hear and determine Randolphe's motions, Randolphe asserts that the Missouri court had jurisdiction by virtue of § 452.450.1(2), RSMo 1978.[7] Randolphe correctly points out that because he, at all times pertinent herein, was a resident of Missouri, at least one litigant—himself—had a "significant connection" with Missouri. Additionally, says Randolphe, Miranda had a "significant connection" with Missouri and there was available in Missouri substantial evidence concerning her present or future care, protection, training, and personal relationships. Asserting that it was in Miranda's best interest that the Missouri court assume jurisdiction, Randolphe insists that all jurisdictional requisites of § 452.450.1(2), RSMo 1978, were satisfied.

Kathryn argues that the Missouri court could not base jurisdiction on § 452.450.-1(2), RSMo 1978, because Miranda had no significant connection with Missouri and there was not available in Missouri substantial evidence concerning Miranda's present or future care, protection, training, and personal relationships.

■ Obviously, the contentions of the parties as to whether the Missouri court had jurisdiction under § 452.450.1(2), RSMo 1978, can be resolved only by examining the evidence heard by the Missouri court to determine whether there was competent and substantial evidence to establish the elements necessary to confer jurisdiction under that section. It is equally obvious that we cannot examine such evidence because Kathryn has failed to supply us a transcript of the trial conducted August 13, 1984.

The Missouri court's judgment contains a finding that said court "has jurisdiction in this cause of action over the parties, and over said minor child." Bearing in mind that an appellant has the burden of affirmatively establishing reversible error, *McCandless v. Manzella*, 369 S.W.2d 188, 190[2] (Mo.1963); *State ex rel. McNutt v. Northup*, 367 S.W.2d 512, 513–14[1] (Mo. 1963), and that it is the duty of an appellant to provide an appellate court with a record containing everything necessary to the determination of questions presented to it, *Coulter v. Michelin Tire Corp.*, 622 S.W.2d 421, 437[34] (Mo.App.1981), *cert. denied*, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982); *Ingram v. Civil Service Commission*, 584 S.W.2d 633, 635[4] (Mo.App.1979), we cannot, in the absence of a transcript of the evidence, convict the trial court of error in making that finding. From the pleadings and briefs alone, it cannot be said with assurance that Randolphe would have been unable to establish jurisdiction in the Missouri court under § 452.450.1(2), RSMo 1978. If the evidence at trial was indeed insufficient to establish jurisdiction in the Missouri court under § 452.450.1(2), RSMo 1978, it was Kathryn's duty to supply us a transcript from which we could make that determination. Inasmuch as Kathryn failed to do so, her first assignment of error must be rejected.

■ Kathryn's second assignment of error is that even if the Missouri court had jurisdiction to hear and determine Randolphe's motions, the Missouri court should not have exercised its jurisdiction because Kathryn's custody proceeding[8] was al-

---

7. Section 452.450, RSMo 1978, appears verbatim in footnote 2, *supra*.

8. Under § 452.445(2), RSMo Cum.Supp.1983, the term "custody proceeding" includes proceed-

ings in which a custody determination is one of the issues. Under § 452.445(1), RSMo Cum. Supp.1983, the term "custody determination" means a court decision and court orders and

ready pending in the Florida court at the time Randolphe filed his motions in the Missouri court. In support of this contention, Kathryn relies on § 452.465.1, RSMo 1978.[9]

Kathryn asserts that § 452.465.1, RSMo 1978, is mandatory, and that under said section a Missouri court shall not exercise its jurisdiction in a custody proceeding if, at the time of the filing of such proceeding, a proceeding concerning the custody of the child is already pending in a court of another state exercising jurisdiction substantially in conformity with the Uniform Child Custody Jurisdiction Act. We have already taken judicial notice that Florida adopted its version of the Uniform Child Custody Jurisdiction Act effective October 1, 1977.

Neither side cites a Missouri case wherein a trial court before which a custody proceeding was pending was obliged to decide how to proceed when a custody proceeding involving the *same child* was already pending in a court of another state exercising jurisdiction substantially in conformity with the Uniform Child Custody Jurisdiction Act. There are, however, helpful cases from other jurisdictions.

*In re McDonald*, 74 Mich.App. 119, 253 N.W.2d 678 (1977), involved a divorce proceeding in Washington, the home state of one parent and of the child whose custody was being sought, and a subsequent custody proceeding by the other parent in Michigan, where the latter parent had taken the child immediately prior to the commencement of the Washington action. Michigan, at that time, had a statute (M.C.L.A. § 600.656(1)) similar to § 452.465.1, RSMo 1978. The Michigan trial court refused to exercise jurisdiction on the ground that the Washington action was pending at the time the Michigan proceeding was instituted, and because Michigan constituted an inconvenient forum. On appeal, it was held that the Michigan court had no jurisdiction, but even if it did, the Michigan court properly

refused to exercise such jurisdiction. 253 N.W.2d. at 681–82[3].

*In re Custody of Rector*, 39 Colo.App. 111, 565 P.2d 950 (1977), involved an action in Colorado to modify the custody provisions of a Kansas decree at a time when an appeal from the latter was pending in the Supreme Court of Kansas. Colorado, at that time, had a statute (§ 14–13–107(1) C.R.S.1973) similar to § 452.465.1, RSMo 1978. The Colorado trial court dismissed the action, and the dismissal was affirmed.

*De Passe v. De Passe*, 70 A.D.2d 473, 421 N.Y.S.2d 497 (1979), involved a husband, wife, and two children who resided in Maryland for four years immediately preceding the wife's departure from the marital home. When the wife left, she took the children with her to New York. The husband promptly commenced a divorce action in Maryland, seeking, among other things, custody of the children. The wife was served in the Maryland action nine days after it was filed. Some three weeks later, the wife obtained an order in a New York court awarding her temporary custody of the children. Later, the New York court decided that state had jurisdiction to determine custody, and ordered a custody hearing. New York, at that time, had a statute (Domestic Relations Law, § 75–g, subd. 1) similar to § 452.465.1, RSMo 1978. The Supreme Court, Appellate Division, held that New York met none of the jurisdictional requisites under the Uniform Child Custody Jurisdiction Act, and, even if it did have jurisdiction, the trial court was obliged to refuse to exercise jurisdiction inasmuch as a proceeding concerning custody was already under way in Maryland. 421 N.Y.S.2d at 499[4].

Randolphe, in asserting that the Missouri court properly exercised jurisdiction even though Kathryn's custody proceeding was pending in the Florida court before he filed his motions in the Missouri court, cites *William R. B v. Cynthia B*, 108 Misc.2d

---

instructions providing for the custody of a child, including visitation rights. These terms are similarly defined in § 61.1306(3) and § 61.-1306(2), Florida UCCJA, respectively.

**9.** Section 452.465.1, RSMo 1978, appears verbatim in footnote 3, *supra.*

920, 439 N.Y.S.2d 265 (Fam.Ct.1981), and *Larsen v. Larsen,* 5 Kan.App.2d 284, 615 P.2d 806 (1980). Neither is helpful, as neither involved a situation where custody proceedings were simultaneously pending in courts of different states. Randolphe also cites *Burch v. Burch,* 424 So.2d 187 (Fla.App.1983), in which the mother of three children brought an action in Florida to establish a New York judgment for child custody and support, for the purpose of modification of the support. The New York court, in a recent order of modification, had provided that the matter would come on for review in the month following the month in which the mother commenced her action in Florida. The opinion held that

inasmuch as the matter was pending in the New York court when the mother commenced the Florida proceeding, the Florida court should not have exercised jurisdiction. *Burch* obviously differs from the instant case in that here, no action was pending in Missouri when Kathryn filed her petition for modification in the Florida court.

As an additional argument in support of the exercise of jurisdiction by the Missouri court, Randolphe contends that Missouri "had and was exercising continuing jurisdiction under 28 U.S.C. § 1738A," the Parental Kidnapping Prevention Act of 1980.[10] We hereafter refer to that Act as "PKPA."

**10.** 28 U.S.C.A. § 1738A (West Supp.1985) provides:

"(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

(b) As used in this section, the term—

(1) 'child' means a person under the age of eighteen;

(2) 'contestant' means a person, including a parent, who claims a right to custody or visitation of a child;

(3) 'custody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;

(4) 'home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;

(5) 'modification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;

(6) 'person acting as a parent' means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;

(7) 'physical custody' means actual possession and control of a child; and

(8) 'State' means a State of the United States, the District Columbia, the Common-

wealth of Puerto Rico, or a territory or possession of the United States.

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

Randolphe fails to identify the provision of the PKPA which enables Missouri to exercise "continuing jurisdiction," evidently relying on us to recognize such provision. We have carefully studied the PKPA, but are unconvinced that it supports Randolphe's position.

It appears to us that the Florida court is exercising jurisdiction in conformity with the PKPA.

The first requirement of the PKPA is that a court have jurisdiction under the laws of its own state. Subsection (c)(1), PKPA. We noted earlier that under § 61.-1306(5), Florida UCCJA, Florida was Miranda's home state at the time Kathryn filed her petition for modification in the Florida court, and that under § 61.-1308(1)(a)1., Florida UCCJA, a Florida court has jurisdiction to decide child custody matters if it is the home state of the child at the time the proceeding is commenced.

The second requirement of the PKPA is that one of the conditions in subsection (c)(2), PKPA, be met. One of those conditions—subsection (c)(2)(A)(i)—is that the state be the home state of the child on the date of the commencement of the proceeding. "Home state," as used in the PKPA, means, so far as pertinent here, the state in which, immediately preceding the time involved, the child lived with a parent for at least six consecutive months. Subsection (b)(4), PKPA. Florida obviously meets that requirement.

Additionally, inasmuch as Kathryn's proceeding was commenced in the Florida

court before Randolphe's proceeding was commenced in the Missouri court, subsection (g), PKPA, comes into play. That subsection provides that a court of a state shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another state where the court of the other state is exercising jurisdiction consistently with the provisions of the PKPA. As it appears that the Florida court is exercising jurisdiction consistently with the PKPA, it follows that under subsection (g), PKPA, the Missouri court is precluded from exercising jurisdiction.

In determining that the PKPA does not aid Randolphe, we do not overlook subsection (d) thereof, which provides that the jurisdiction of a court of a state which has made a child custody determination consistently with the provisions of the PKPA continues as long as the requirement of subsection (c)(1) of the PKPA continues to be met and such state remains the residence of the child or of any contestant. Subsection (c)(1), PKPA, is the provision that requires a court to have jurisdiction under the law of its state. Earlier, in rejecting Kathryn's first point, we concluded that we could not, without a transcript of the evidence, rule that the Missouri court lacked jurisdiction, as it was possible that Randolphe's evidence could have established jurisdiction under § 452.450.1(2), RSMo 1978.

However, even assuming (without deciding) that the Missouri court had jurisdiction

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."

under § 452.450.1(2), RSMo 1978—thereby satisfying subsection (d), PKPA—another subsection of the PKPA must be considered. Subsection (f), PKPA, provides that a court of a state may modify a determination of the custody of the same child made by a court of another state if the former has jurisdiction to make such a child custody determination and the latter no longer has jurisdiction *or has declined to exercise such jurisdiction to modify such determination.* Even though, in the instant case, the Missouri court arguably has jurisdiction (by reason of § 452.450.-1(2), RSMo 1978) to modify the 1977 decree, we believe that by reason of § 452.465.1, RSMo 1978,[11] Missouri has determined that its courts shall decline to exercise jurisdiction under the Uniform Child Custody Jurisdiction Act if, at the time of the commencement of a custody proceeding, a proceeding concerning the custody of the child is pending in a court of another state exercising jurisdiction substantially in conformity with the Uniform Child Custody Jurisdiction Act, unless the proceeding is stayed by the court of the other state for any reason. Nothing in the instant case indicates that the Florida court had stayed its proceeding. Indeed, according to the notice served on Randolphe, Kathryn's petition for modification in the Florida court was scheduled to be heard a week after the trial in the Missouri court. Thus, in the instant case, under § 452.465.1, RSMo 1978, the Missouri court was obliged to decline to exercise its jurisdiction, thereby allowing the Florida court to proceed.

We are therefore persuaded that under subsections (f) and (g), PKPA, and § 452.-465.1, RSMo 1978, the Missouri court erred in exercising jurisdiction in the instant case. Kathryn's second assignment of error is, consequently, meritorious and requires reversal of the judgment.

Having decided that, we need not consider Kathryn's third point, which asserts that the Missouri court should have declined to exercise jurisdiction because it was an inconvenient forum, § 452.470.1, RSMo Cum.

Supp.1983. We likewise need not consider Kathryn's fourth point, which asserts that the Missouri court, pursuant to § 452.475, RSMo 1978, should have declined to exercise jurisdiction because Randolphe engaged in reprehensible conduct by failing to disclose to the Missouri court the pendency of Kathryn's proceeding in the Florida court, as required by § 452.480.1(2), RSMo Cum.Supp.1983, and because Randolphe "wrongfully obtained" physical custody of Miranda under the pretext of exercising visitation rights, then, immediately upon returning to Missouri with Miranda, commenced the instant proceeding. We note, however, that subsection "1" of § 452.475, RSMo 1978, pertains to a "petitioner for an initial decree," which is not the situation in the instant case, and that subsection "2" of § 452.475, RSMo 1978, pertains to an action "to modify a custody decree of another state," which is likewise not the situation (so far as the Missouri court is concerned) in the instant case. We therefore fail to see how § 452.475, RSMo 1978, could have supported Kathryn's fourth point, had we been obliged to decide such point.

In holding that the Missouri court wrongly exercised jurisdiction in the instant case, we are not oblivious of the plight of a noncustodial parent in Missouri when the custodial parent permanently removes the child from Missouri. The situation is not, however, as bleak as one might suppose. Under subsection (c)(2)(A)(ii), PKPA, and § 452.450.1(1)(b), RSMo 1978 (assuming Missouri was the child's home state at the time of his removal), Missouri would have jurisdiction in a custody proceeding if the noncustodial parent continued to reside in Missouri and commenced the proceeding within six months after the child's removal. The purpose of these provisions, as explained in the Commissioners' Note under § 3, Uniform Child Custody Jurisdiction Act, 9 U.L.A. 123 (1979), is to protect a parent who has been left by the other parent taking the child along. The stay-at-home parent, if he acts promptly, may start proceedings in his own state if he desires,

**11.** Section 452.465.1, RSMo 1978, appears verbatim in footnote 3, *supra.*

without the necessity of following the departed parent to another state, or perhaps to several states in succession. In the instant case, however, Randolphe, by waiting four years before instituting the instant proceeding, allowed "home state" jurisdiction to attach in Florida, thus bringing into play the sundry statutory provisions heretofore discussed.

Kathryn's final assignment of error is that the Missouri court erred in failing to award her costs, attorney's fees and travel expenses. Kathryn maintains that under § 452.470.6, RSMo Cum.Supp.1983, if a court finds that it is "clearly an inappropriate forum," or that under § 452.475.3, RSMo 1978, if a court dismisses a petition because the party initiating the proceeding engaged in wrongful conduct, such court may require the party initiating the proceeding to pay the other party's travel and other expenses, and attorneys' fees. Kathryn asserts that if we reverse the judgment she should be awarded such allowances.

■ The point is without merit. Our reversal is not because the Missouri court was an inappropriate forum or because the Missouri court should have declined to exercise jurisdiction because of Randolphe's conduct. Our reversal, as heretofore explained, is because the Missouri court should not have exercised jurisdiction by reason of subsections (f) and (g), PKPA, and § 452.465.1, RSMo 1978. Consequently, § 452.470.6, RSMo Cum.Supp.1983, and § 452.475.3, RSMo 1978, are inapplicable. Furthermore, as noted earlier, neither subsection "1" nor subsection "2" of § 452.-475, RSMo 1978, fits the situation in the instant case. We therefore fail to see how the Missouri court would have had authority to award Kathryn anything under subsection "3" of § 452.475, RSMo 1978.

More importantly, however, awards under the sections cited by Kathryn are discretionary, not mandatory, and, in the absence of a transcript of the evidence, we are unable to say that such allowances should have been awarded, even had they been authorized. Kathryn's final point is, accordingly, denied.

The judgment is reversed.

FLANIGAN and MAUS, JJ., concur.

PREWITT, C.J., not participating.