(615 P.2d 806)
No. 51,475

LYNDA C. LARSEN, now LYNDA C. WHITE, *Appellee,* v. LARRY J. LARSEN, *Appellant.*

Opinion filed August 15, 1980.

*Wallace W. Underhill,* of Sawhill & Underhill, of Haysville, for appellant.

*Lester A. Holloway,* of Vaughn, Updegraff, Allison, Holloway and Weaver, of Wichita, for appellee.

Before REES, P.J., SPENCER and MEYER, JJ.

MEYER, J.: This appeal is by Larry J. Larsen (appellant) from a post-divorce change of custody of his children to Lynda C. White (appellee).

The parties were married in Kansas on July 24, 1964. They were divorced in Kansas on February 6, 1974. Appellant husband was granted custody of the parties' two minor sons subject to reasonable visitation rights by appellee. The children were ages 9 and 14 at the time of the change of custody hearing.

In August, 1975, appellant moved to Minnesota, taking his two sons with him. He subsequently remarried. His present wife has custody of a child from a previous marriage.

Appellee continued to live in Kansas and is also remarried. She and her new husband have no children.

The apparent practice was for appellee to have custody for visitation purposes for some period during the summer of each year. In August of 1976 and again in August of 1977, appellee filed motions for change of custody which were denied.

The instant motion for change of custody was filed July 20, 1979. Appellant moved to dismiss for lack of jurisdiction under the Uniform Child Custody Jurisdiction Act, K.S.A. 1979 Supp. 38-1301 *et seq.* The trial court denied the motion to dismiss and proceeded to hear the change of custody motion on the merits.

At the time of the hearing, the children had been with their mother for two months for summer visitation.

Appellee testified that when the boys arrived for the summer they were tense and withdrawn and that by the end of the visit they had loosened up significantly. She talked of the activities she and her new husband share with the boys. She indicated the boys had told her that their father is not available as much as they would like, in that he travels. They are supervised normally by their stepmother who makes distinctions between them and her own son. Appellee stated the boys told her they wanted a change of custody.

On cross-examination, she admitted she had given custody of the boys to the father at the time of the divorce and that she was having psychological problems at that time.

Grover White, appellee's new husband, testified as to his financial ability to support the boys and to the father-son type of relationship he had with them. He indicated that Don, the oldest, was especially introverted when he arrived for visits and that he had tried to teach Don self-respect through various activities.

Appellant testified that when the boys leave at the first of the summer for a visit they are happy and well adjusted and that they return agitated and troubled. He stated that they told him they were afraid that their mother would once again try and talk them into staying with her. He indicated that Don has always had learning and emotional problems, that he was receiving help in the Minnesota schools and had improved in the past year. He stated he is out of the home approximately two nights a week, and that his new wife loves the boys.

At the close of the testimony, the trial judge indicated he had

talked to the boys. While indicating that the boys loved both parents and that each parent could love and care for the boys, he stated that "[t]hey have had a bee in their bonnet to reside with their mother for some time. There will never be peace and harmony with these people until that is accomplished." He then modified custody to provide that the boys would live with their mother during the school year and with their father during the summer.

The first two issues are whether the court erred in finding it had jurisdiction, and, if not, did the court err in failing to find that Kansas was an inconvenient forum. We consider these two issues together because they are so closely related.

The parties were divorced in Kansas and the court at that time determined custody as an incident to the decree. Since 1963, our statutes have provided that Kansas has continuing jurisdiction over custody matters under such circumstances. K.S.A. 60-1610(*a*). It has been held that such jurisdiction exists even though the child has moved to another state with the custodial parent. *Lyerla v. Lyerla,* 195 Kan. 259, 403 P.2d 989 (1965).

Effective January 1, 1979, however, Kansas joined the ranks of those states which have adopted the Uniform Child Custody Jurisdiction Act, K.S.A. 1979 Supp. 38-1301 *et seq.* Incident to the adoption of the act, K.S.A. 60-1610(*a*) was amended to provide (as emphasized):

"The court . . . shall always have jurisdiction to make any . . . order to advance the welfare of a minor child if . . . (iii) the court has previously exercised jurisdiction to determine the custody or care of a child who was at such time domiciled in the state. *The court shall make provision for the custody of the minor children only when the court has jurisdiction to make a child custody decree under the provisions of the uniform child custody jurisdiction act.*" K.S.A. 1979 Supp. 60-1610(*a*).

The question of jurisdiction conferred by K.S.A. 1979 Supp. 60-1610(*a*) must now be considered in conjunction with the Uniform Child Custody Jurisdiction Act, K.S.A. 1979 Supp. 38-1303, which provides in pertinent part:

"(*a*) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because

of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

"(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

K.S.A. 1979 Supp. 38-1302(*e*) defined "home state" as follows:

"(*e*) 'home state' means the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."

In the present case, appellant father contends that Kansas courts lack jurisdiction to determine the modification of custody. The pertinent portions of K.S.A. 1979 Supp. 38-1303 for purposes of this case are subsections (*a*)(1) and (2). Appellant essentially relies on the fact that Kansas is not the "home state" under subsection (*a*)(1). Appellee does not contest this fact but argues that jurisdiction is present under subsection (*a*)(2) in that she and the children have a "significant connection" with Kansas and "substantial evidence" is available here as to their present or future well-being. The trial court's reasoning in finding jurisdiction is not present in the record; it is to be presumed that the court found jurisdiction under subsection (*a*)(2).

At the outset it is clear that appellant is correct at least in his contention that jurisdiction does not exist under the "home state" provision of subsection (*a*)(1). The evidence is uncontradicted that the children had resided with appellant in Minnesota since 1975 and had not resided in Kansas for any period of six consecutive months at any time since then.

Jurisdiction can exist under subsection (*a*)(2), however, if the children and at least one of the contesting parents have a "significant connection" with Kansas *and* "substantial evidence" is available here as to the children's present or future care, protection, training, and personal relationships. Under this test it would appear that Kansas *does* have jurisdiction. In this regard it can be noted that the children were apparently born in Kansas and spent the early years of their lives here. Appellee mother has continued

to live here. There is undoubtedly substantial evidence as to the children's present and future well-being in this state. None of the cases cited by appellant under his jurisdiction argument stand for the proposition that a state with ties to children such as Kansas has in this case is without jurisdiction under the act. In fact all of the cases cited hold that jurisdiction *exists,* but nonetheless should not be exercised.

This brings us to appellant's second issue, which is whether Kansas is an inconvenient forum. The commissioner's note to section 3 of the Uniform Act states:

"Paragraphs (1) and (2) of subsection (a) establish the two major bases for jurisdiction. In the first place, a court in the child's home state has jurisdiction, and secondly, if there is no home state or the child and his family have got equal or stronger ties with another state, a court in that state has jurisdiction. If this alternative test produces concurrent jurisdiction in more than one state, the mechanisms provided in sections 6 and 7 are used to assure that only one state makes the custody decision." 9 Uniform Laws Ann., Child Custody Jurisdiction § 3, p. 123 (1979).

It thus appears that both Kansas and Minnesota have jurisdiction over the custody of the children in this case. The question becomes which state should exercise that jurisdiction.

It is of note that the act itself indicates a preference for the state of the original decree unless the facts demonstrate that state to be an inconvenient forum. K.S.A. 1979 Supp. 38-1314(*a*) provides:

"If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction."

It is further of note that Minnesota has adopted the act. See Minn. Stat. § 518A.01 *et seq.*

Section 6 of the act (K.S.A. 1979 Supp. 38-1306) deals with the situation where proceedings are pending in another state, which is not the case here. Section 7 (K.S.A. 1979 Supp. 38-1307) dealing with inconvenient forum provides in pertinent part:

"(*a*) A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(*b*) A finding of inconvenient forum may be made upon the court's own motion

or upon motion of a party or a guardian *ad litem* or other representative of the child.

"(*c*) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(1) If another state is or recently was the child's home state;

"(2) if another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;

"(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"(4) if the parties have agreed on another forum which is no less appropriate; and

"(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in K.S.A. 1978 Supp. 38-1301.

. . . .

"(*e*) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate such party's consent and submission to the jurisdiction of the other forum."

Courts in other states which have adopted the act have discussed the inconvenient forum problem. The California cases are exemplified in *Schlumpf v. Superior Court,* 79 Cal. App. 3d 892, 145 Cal. Rptr. 190 (1978). There the parties were divorced in California and custody was given to the mother. One year later custody was changed to the father who thereafter moved to Wyoming with the children. Nine years later, the mother filed a motion in California for change of custody. The court first determined that California *did* have jurisdiction under the act:

"The [trial] court's decision is supported by the following: the parties lived in California during their marriage, the divorce proceeding and subsequent modification of the child custody decree were heard and determined by a California court, the mother has remained a resident of California since the divorce, the children have visited the mother here and [one child] resided with the mother for a 10-month period during 1975-1976, and much of the evidence relative to the mother's fitness as a custodial parent is in California. Those facts, in our view, support the [trial] court's determination that California has jurisdiction under the Act." 79 Cal. App. 3d at 897.

Following California's equivalent of K.S.A. 1979 Supp. 38-1307, however, the court held that California should decline to exercise its jurisdiction because Wyoming was a more convenient forum under the facts:

"The determination of what is in the best interest and welfare of the children is

necessarily a comparative issue. The evidence cannot be limited to the mother's present emotional well-being and suitability. Very important evidence as to what is in the best interest of the children is to be found in Wyoming: the children's current relationship with the father and his wife, with whom they have resided since 1968; their relationship to the community in which they have resided for the last five years; and their schooling and education. The court must also consider the possible adverse effect that a change of custody could have upon the children. Evidence of all of these factors is most readily available at the site of the children's home, Wyoming. It is true that evidence of the mother's suitability as a custodial parent is an important consideration, as is evidence of the father's suitability. Of all the evidence which must be considered only the evidence of the mother's present suitability is better obtained in California. The bulk of the evidence regarding the best interests of the children is more readily available in Wyoming." 79 Cal. App. 3d at 901.

Accordingly, the court ordered the California proceedings stayed pending a determination in Wyoming, or a decision by Wyoming to itself decline jurisdiction. See also *Winkelman v. Moses,* 279 N.W.2d 897 (S.D. 1979),—South Dakota had jurisdiction to modify South Dakota custody order but should decline where mother and child had resided in California for five years; *Mayer v. Mayer,* 91 Wis. 2d 342, 283 N.W.2d 591 (Ct. App. 1979),—in original divorce action, Wisconsin court, which had jurisdiction under "home state" provision, abused its discretion in not considering the statutory inconvenient forum factors as to custody where wife and child had resided in California since petition was filed; *Moore v. Moore,* 24 Or. App. 673, 546 P.2d 1104 (1976),—Oregon had jurisdiction to modify Oregon custody order but should decline where father and child had resided in Washington for two years.

On the other hand, see *Breneman v. Breneman,* 92 Mich. App. 2d 336, 284 N.W.2d 804 (1979), where the court emphasized that section 7 of the Uniform Act provides that the court "may" decline jurisdiction under the inconvenient forum provision. That case involved a Michigan divorce and custody award to the mother. The child then moved with the mother to Illinois but visited the father in Michigan. On the father's motion to change custody, the court noted that Michigan had jurisdiction and because the Michigan court was "extremely familiar" with the facts, having heard the divorce and other custody motions, the court did not abuse its discretion in failing to decline jurisdiction. However, the court also found an emergency situation under the act based on a finding that the child had been abused while in the mother's custody in Illinois.

Florida cases appear to go both ways, without discussing the inconvenient forum provisions of the act. In *Hofer v. Agner,* 373 So. 2d 48 (Fla. App. 1979), the court found jurisdiction under the Florida equivalent of subsection (*a*)(2) where the original custody order had been entered in Florida and the father and other relatives continued to reside in Florida, even though the mother and child lived in New Jersey. The opinion does not mention inconvenient forum. In *Matteson v. Matteson,* 379 So. 2d 677 (Fla. App. 1980), however, the court held that the trial court should have "declined" jurisdiction although the father continued to live in Florida, where the wife and children under a Florida custody order now lived in New York. The court again did not discuss inconvenient forum, but seemed to say that Florida lacked jurisdiction altogether. The court stated that the fact that the original custody order was in Florida and the father continued to reside there did not constitute "significant connections" under the act.

*Etter v. Etter,* 43 Md. App. 395, 405 A.2d 760 (1979), relied on by appellee and set out in her brief, is not inconsistent with the other decisions which have considered the inconvenient forum provisions. There, the child resided with his father in Delaware until he asked to live with his mother in Maryland. The mother brought the child to Maryland and initiated custody proceedings there. The court found Maryland to have jurisdiction and to be a convenient forum, specifically finding that under the facts Maryland had a "closer connection" with the child and mother and that "substantial evidence" was more readily available in Maryland. See the statutory factors in section 7 of the Uniform Act. See also Annot., 96 A.L.R.3d 968 (1979).

In the present case, examination of the facts as they relate to the statutory factors set out in K.S.A. 1979 Supp. 38-1307(*c*), discloses:

(1) Minnesota is the children's home state.
(2) It would seem that Minnesota has a "closer connection" with the children and one of the contestants. The children have spent most of the past five years residing with appellant and his new wife.
(3) Substantial evidence concerning present or future care, protection, training, and personal relationships is probably

available in both states. Of course, evidence relative to the mother in such regard is more readily available in Kansas, whereas evidence relative to the father is more readily available in Minnesota. However, due to the fact that the children have spent most of their time in Minnesota it would appear that evidence as to *them* would be more readily available there.

(4) The parties have apparently not agreed on any other forum.

(5) Exercise of jurisdiction by Kansas courts would probably not contravene the purposes of the act unless it is determined that Minnesota has "closer connections" with the children.

K.S.A. 1979 Supp. 38-1301 provides:

"(*a*) The general purposes of this act are to: (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

"(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

"(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the child's family have a closer connection with another state;

"(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

"(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

"(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;

"(7) facilitate the enforcement of custody decrees of other states;

"(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

"(9) make uniform the law of those states which enact it.

"(b) This act shall be construed to promote the general purposes stated in this section."

It would seem that Kansas *has* jurisdiction under the act, and whether it should exercise that jurisdiction under the inconvenient forum provisions of K.S.A. 1979 Supp. 38-1307 is discretionary with the trial court. The reasoning of the California court in *Schlumpf,* while persuasive, is, of course, not binding.

The issue of whether the trial court erred in modifying custody must be considered. The applicable standards for review of a change of custody order were set out in *Simmons v. Simmons,* 223 Kan. 639, 576 P.2d 589 (1978), where the court held that the question of a change of custody is addressed to the sound judicial discretion of the trial court and the appellate court's review of the trial court's determination is very limited. 223 Kan. at 643. The judgment of the trial court will not be disturbed without an affirmative showing of an abuse of discretion.

Under this standard, it is clear that the court did not abuse its discretion. The court can properly take note of the mother's improved circumstances including a stable, financially secure home life. The court can also consider the circumstances at the father's home including the fact that the father had to be away from home at times, that the stepmother sometimes worked, and the presence of the stepbrother. Moreover, the court saw the parties, talked with the children, and was thoroughly familiar with the matter.

Appellant also claims that the court erred in ordering joint custody.

The journal entry provides:

"2. That it would be in the best interests of said minor children if their custody was awarded to the plaintiff and defendant jointly.

"3. That it would also be in the best interests of the said minor children if the plaintiff had custody during the school year, beginning forthwith, and the defendant had custody from one (1) week after school is out until one (1) week before school begins in the fall, and that the plaintiff is to pay all of the transportation costs for the minor children to and from defendant's home in Lake Crystal, Minnesota, each year."

The problem arises with the court's use of "jointly."
K.S.A. 1979 Supp. 60-1610(*b*) provides in part:

"The court may give the care and custody of such children to one of the parties to the suit with reasonable visitation rights to the other, or the court may give the custody of such children to the parties jointly *if the parties so agree* and if the court finds that a joint custody arrangement would be in the best interest of the child or children. Joint custody under this subsection means that both parties have equal rights and responsibilities to the minor child, subject to orders of the court, and neither party's rights are superior." (Emphasis added.)

Appellant argues that joint custody may not be awarded absent agreement of the parties. Since there is no such agreement here, such an award is unauthorized. The language of K.S.A. 1979

Supp. 60-1610(*b*) was added by amendment in 1979. It has not been previously interpreted. Judge Gard states in 2 Gard, Kansas C. Civ. Proc. 2d. § 60-1610(b) (1979):

"The 1979 amendment to this subsection makes it clear that the court has jurisdiction to award custody of children to the parties jointly but only if the parties agree and the court finds it to be to the best interest of the children. The parties having joint custody have equal rights and responsibilities and are subject to the continuing supervision of the court."

It thus appears that appellant is technically correct in arguing that "joint" custody was error in the absence of an agreement by the parties. As a practical matter, of course, the same result is obtained by giving formal custody to appellee with visitation rights in appellant for the same period specified as his "custody" period in the court's order.

Kansas has jurisdiction over the modification of custody, and whether Kansas should exercise it is discretionary with the trial court.

Our function as an appellate court does not depend upon whether we agree entirely with the trial court's judgment, nor does it matter that some other judge or court might make a different decision were they the trier of fact. The rule to which this court is committed is set out specifically in *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973), wherein abuse of judicial discretion was described as:

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds."

No abuse of discretion is present in the court's order changing custody, although the order should be modified to provide only visitation in appellant instead of joint custody.

Affirmed as modified.