No. 66,704

In the Matter of the Marriage of MARK E. MOSIER *Appellee*, and KATHLEEN M. MOSIER, *Appellant*.

(836 P.2d 1158)

Opinion filed July 10, 1992.

*Sally Pokorny*, of Coffeyville, argued the cause and was on the brief for appellant.

*Curt T. Schneider*, of Schneider & Casebeer, of Coffeyville, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: This is an interlocutory appeal in a child custody dispute from an order of the district court finding that it had jurisdiction under the Kansas Uniform Child Custody Jurisdiction Act (the Kansas Act), K.S.A. 38-1301 *et seq.* References to the Uniform Child Custody Jurisdiction Act (UCCJA), 9 U.L.A. 115 (1968), as adopted by the National Conference of Commissioners on Uniform State Laws will be to the appropriate sections of that act.

The facts are not in dispute and will be set forth sufficiently to consider the jurisdictional issue. Mark and Kathleen Mosier were married in 1985 in Kansas City, Missouri, and thereafter moved to Iowa. A son, Grant, was born on June 16, 1988. For simplicity and clarity the parties will be referred to by their first names. In the summer of 1989, the parties separated and later that year Kathleen and Grant moved to Coffeyville, Kansas. Although the record does not reflect the date a petition for dissolution of marriage was filed in Iowa, the marriage was dissolved by the Iowa court on March 26, 1990. Both parties were represented by counsel, and as a part of the dissolution proceedings the Iowa court entered a lengthy order, based upon an agreement of the parties, resolving all matters "including without limitation child custody and visitation, child support, spousal maintenance, allocation of assets and liabilities, attorney's fees and court costs." At the time of the dissolution, Mark continued to be a resident of Iowa and Kathleen and Grant were residing in Montgomery County, Kansas. The Iowa decree awarded the parties joint custody of Grant with primary residential custody to Kathleen and liberal rights of visitation to Mark.

On June 21, 1990, the parties filed a joint petition requesting the District Court of Montgomery County, Kansas, to assume jurisdiction over the parties and the subject matter. The petition alleged that Kansas was vested with jurisdiction pursuant to K.S.A. 38-1303, as Kansas was the "home state" of the child as defined in K.S.A. 38-1302(e). No affirmative relief was sought in the petition. On the same day, the District Court of Montgomery County entered an order determining that it had jurisdiction of the parties and the subject matter. The order was signed by each party's counsel and appears to have been an agreed order.

On August 3, 1990, Mark filed a motion for change of custody in the District Court of Montgomery County. The motion requested that residential custody be changed to the father, with liberal rights of visitation to the mother. After a hearing held November 29, 1990, the court, on December 21, 1990, issued a memorandum decision granting sole custody to each party for alternate six-month periods with Mark receiving custody for the first period from Christmas Eve, December 24, 1990, through the afternoon of Grant's birthday, June 16, 1991. The decision also made provisions for periodic visitation with the noncustodial parent during each six-month period. The terms of the memorandum decision were included in an order and journal entry filed January 9, 1991. Kathleen filed a notice of appeal from the court's decision but subsequently withdrew that appeal.

On March 19, 1991, Kathleen moved to Missouri. At the time Grant was living with his father in Iowa, apparently in accordance with the provisions of the December 1990 memorandum decision.

On April 30, 1991, Mark filed another motion in the District Court of Montgomery County, asking that the court modify its previous child custody modification order. He alleged Kathleen's change in residence and employment constituted a material change in circumstance sufficient to warrant modification of the court's previously entered orders. On May 13, 1991, Kathleen filed a motion to dismiss the motion for modification pending in Montgomery County, Kansas, claiming *inter alia,* that the Kansas district court had no jurisdiction to decide a modification of its earlier decree because "Kansas is not the home state of the child and no parent lives in [Kansas]." On May 30, 1991, the Kansas district court denied the motion to dismiss. The court found it had jurisdiction, under the Kansas Act, to decide the modification motion.

On May 29, 1991, Kathleen filed a motion to modify custody in the Circuit Court of Jackson County, Missouri. Mark filed a motion to dismiss that action for lack of jurisdiction. The Missouri court has taken the question of jurisdiction under advisement pending the outcome of this appeal.

On June 5, 1991, the Kansas district court entered an order authorizing an interlocutory appeal of its order denying the motion to dismiss. The Court of Appeals denied Kathleen's appli-

cation for an interlocutory appeal. On July 30, 1991, Kathleen filed a petition for review of the denial of the application for interlocutory appeal. This court granted the petition for review and directed the parties to brief the issues for argument to, and consideration by, the Supreme Court.

On appeal, Mark's position is that the Kansas district court retains jurisdiction to modify its previous custody modification order. Kathleen's position is that the Kansas court does not have continuing jurisdiction to hear future custody matters pursuant to the Kansas Act, as neither the mother, the father, nor the child reside in Kansas, and that Missouri is the proper forum.

Unfortunately, the parties totally ignore the threshold question of whether, under the terms of the UCCJA and its Kansas counterpart, Kansas ever had jurisdiction of this matter. There can be no doubt but that the parties, by their joint motion to the Montgomery County court in June 1990, submitted to the personal jurisdiction of the court. It is equally clear that if the court lacked subject matter jurisdiction the parties could not, ordinarily, confer such jurisdiction upon the court by consent, waiver, or estoppel. *In re Miller,* 228 Kan. 606, Syl. ¶ 1, 620 P.2d 800 (1980); *In re Estate of Freshour,* 177 Kan. 492, 499-500, 280 P.2d 642 (1955).

Throughout this opinion there will be references to not only the Kansas Act but also to the UCCJA. The two acts are essentially identical and the sections relevant to the issues here have no material differences and may be considered interchangeable.

K.S.A. 38-1314 provides:

"**Modification of custody decree of another state.** (a) *If a court of another state has made a custody decree, a court of this state shall not modify that decree unless* (1) it appears to the court of this state that *the court which rendered the decree does not now have jurisdiction* under jurisdictional prerequisites substantially in accordance with this act *or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.*

"(b) If a court of this state is authorized under subsection (a) and K.S.A. 38-1308 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with K.S.A. 38-1322." (Emphasis added.)

K.S.A. 38-1303 sets forth the jurisdictional requirements for both initial and modification decrees determining child custody. However, K.S.A. 38-1314 limits this state's jurisdiction when another state has previously issued a valid child custody decree and that state continues to have jurisdiction under provisions of its law comparable to those of K.S.A. 38-1303.

On March 26, 1990, the Iowa district court granted a dissolution of marriage decree and, as part of that decree, issued a valid child custody order. Pursuant to K.S.A. 38-1314(a) (UCCJA § 14[a]), the Iowa district court retains *exclusive continuing* jurisdiction as to any modification of custody so long as Iowa continues to meet jurisdictional prerequisites substantially in accordance with the requirements of K.S.A. 38-1303.

First, it appears that Iowa continues to have jurisdiction under "jurisdictional prerequisites substantially in accordance with this act." K.S.A. 38-1314(a)(1). That is, Iowa continues to meet the jurisdictional requirements of K.S.A. 38-1303 and UCCJA § 3. Grant's connections to Iowa are significant. Grant apparently was born in Iowa and lived a full year in Iowa before moving with his mother to Kansas. He was residing with his father in Iowa at the time Mark filed the April 30, 1991, motion to modify custody. The court record of the original proceeding is in Iowa. Thus, substantial evidence relevant to the custody of the child remains in Iowa.

Second, it does not appear that Iowa "has declined to assume jurisdiction to modify the decree." K.S.A. 38-1314(a)(1). There is no indication in the record on appeal that the Iowa court has explicitly relinquished jurisdiction and there is no showing that either of the parties or the Montgomery County district judge made any attempt to determine whether Iowa was willing or intended to relinquish jurisdiction to Kansas. It would have been a simple matter for the parties, or the court sua sponte, to contact the Iowa court and determine whether it would relinquish jurisdiction to Kansas.

Absent a showing that Iowa no longer has jurisdiction or that Iowa explicitly relinquished its jurisdiction to another court, the general rule is that Iowa's exclusive jurisdiction continues, and

no other court has jurisdiction to modify the initial custody decree.

K.S.A. 38-1314 is the key provision which carries out the UCCJA's objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered. The Commissioners' Comment to § 14 of the UCCJA states:

### COMMENT

"Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. See *People ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S. Ct. 903, 91 L. Ed 1133 (1947). In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) [K.S.A. 38-1314(a)] declares that other states will defer to the continuing jurisdiction of the court of another state as long as .that state has jurisdiction under the standards of this Act. *In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3 [K.S.A. 38-1303].* The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. Compare Ratner, Child Custody in a Federal System, 62 Mich. L. Rev. 795, 821-2 (1964).

"For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6-1/2 months (3-1/2 months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the "home state" of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law." (Emphasis added.) 9 U.L.A. 292.

The parties and the Kansas district court appear to mistakenly rely solely upon K.S.A. 38-1303 to find that Kansas has jurisdiction. In doing so, the parties (and the district court) have ignored the key provisions of K.S.A. 38-1314 and have blurred the essential distinction between initial and continuing jurisdiction.

Initial jurisdiction is determined primarily by K.S.A. 38-1303. Modification jurisdiction, on the other hand, is governed primarily

by K.S.A. 38-1314, reinforced where necessary by the stronger clean hands rules of K.S.A. 38-1308 [UCCJA § 8]. As the Commissioners' Comment to § 6 states, "[o]nce a custody decree has been rendered in one state, jurisdiction is determined by sections 8 and 14." 9 U.L.A. 220. Further, the Commissioners' Comment to § 15 explains that "[t]he authority to enforce an out-of-state decree does not include the power to modify it. If modification is desired, the petition must be directed to the court which has jurisdiction to modify under section 14." 9 U.L.A. 311.

The language of the UCCJA, reinforced by the Comments, indicates that only one state—the state of continuing jurisdiction—has the power to modify the custody decree. In short, concurrent jurisdiction is incompatible with the language of the UCCJA.

Other courts have followed this reasong. See, e.g., *Clark v. Kendrick*, 670 P.2d 32 (Colo. App. 1983); *Kraft v. District Court*, 197 Colo. 10, 593 P.2d 321 (1979); *Woodhouse v. District Court*, 196 Colo. 558, 587 P.2d 1199 (1978); *Fry v. Ball*, 190 Colo. 28, 544 P.2d 402 (1975); *Roby v. Nelson*, 562 So. 2d 375 (Fla. Dist. App. 1990); *Crump v. Crump*, 821 P.2d 1172 (Utah App. 1991); Annot., 83 A.L.R.4th 742.

Professor Brigitte M. Bodenheimer, who served as the Reporter for the National Conference of Commissioners on Uniform State Laws during the drafting of the UCCJA and is a recognized authority on the uniform act, discusses jurisdictional issues under the UCCJA in her article *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA*, 14 Fam. L.Q. 203 (1981).

The parties here, in their original petition to the district court, apparently relied upon the six-month "home state" provisions of the Kansas Act in seeking to establish jurisdiction in Kansas. As stated by Professor Bodenheimer,

"[e]xclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required." 14 Fam. L.Q. at 215.

Thus, the mere fact that Kansas was Grant's "home state" at the time the parties jointly petitioned the Kansas district court to assume jurisdiction on June 21, 1990, was not sufficient to vest Kansas with jurisdiction and to wrest jurisdiction from Iowa.

While some states have adopted a theory of concurrent modification jurisdiction based upon the present location or "home state" of the child, such an approach is rejected by most authorities and the better reasoned cases. Our Court of Appeals in *Larsen v. Larsen*, 5 Kan. App. 2d 284, 615 P.2d 806 (1980), appeared to recognize that two states could have concurrent jurisdiction under the UCCJA. In *Larsen*, the parties were divorced in Kansas. After the divorce, the father and the children moved to Minnesota, while the mother remained a resident of Kansas. Several years after the divorce, the mother of the children filed a motion in Kansas asking for a modification of the original custody order. The father of the children argued that, because he and the children were residents of Minnesota, the Kansas courts no longer had jurisdiction. Although *Larsen* ultimately held that, under the UCCJA, the Kansas courts retained jurisdiction, the opinion also noted:

"It thus appears that both Kansas and Minnesota have jurisdiction over the custody of the children in this case. The question becomes which state should exercise that jurisdiction." 5 Kan. App. 2d at 288.

However, the UCCJA does not appear to contemplate concurrent modification jurisdiction. As stated by Professor Bodenheimer:

"Some decisions proceed on the erroneous assumption that both the state of the original decree and the state where the child subsequently resides for six months have jurisdiction to modify the original decree. They say that there is 'significant connection' jurisdiction in the state of the original decree and concurrent 'home state' jurisdiction in the new state. [*E.g., Allison v. Superior Court*, 99 Cal. App. 3d 993, 160 Cal. Rptr. 309 (1979); *Carson v. Carson*, 29 Or. App. 861, 565 P.2d 763 (1977); *see Leighton v. Leighton*, 596 P.2d 8 (Alaska 1979).]

"This 'concurrent jurisdiction' theory is incompatible with the clear language of the Act. Section 14 is unambiguous: if the state of the original decree has jurisdiction, a court of another state 'shall not modify that decree.' In other words, the state of the prior decree alone has jurisdiction to modify its decree. This jurisdiction is exclusive. No other state has authority to hear a petition for modification." 14 Fam. L.Q. at 216-17.

In *Crump v. Crump*, 821 P.2d 1172 (Utah App. 1991), the court was faced with facts very similar to those in the present case. Mr. and Mrs. Crump, residents of Montana, were granted a decree of divorce in 1983 by a Montana district court. Prior to a hearing on the issue of child custody, the mother moved with the parties' children to Utah. In 1985, the Montana district court awarded the parties joint legal custody of the children, with primary physical custody awarded to the mother. In 1989, the father filed a petition in Utah to modify the Montana custody decree. In his petition, the father alleged a material change of circumstances and urged that he be awarded primary physical custody of the children. The father still resided in Montana at the time he filed his petition and had continuously resided in that state at all times relevant to the case. The trial court in Utah heard evidence and denied the petition to modify the prior custody decree. The father then appealed the trial court's denial of his petition to modify the custody order. The Utah Court of Appeals held that under the UCCJA, the Utah court lacked jurisdiction and that jurisdiction to modify the original custody decree remained exclusively in Montana.

The Utah Court of Appeals first addressed the issue of whether the voluntary submission by Mr. Crump to the Utah courts waived any question of the jurisdiction of the Utah court to hear and determine the matter. The court relied upon the general rule that parties cannot, by consent, confer subject matter jurisdiction upon a court that otherwise lacks such jurisdiction. In so holding, the court quoted from 83 A.L.R. 4th 742, 748, to the effect that " 'subject matter jurisdiction under [the relevant child custody statutes] cannot be vested by agreement of the parties, even though all of the parties desire an adjudication on the merits, and such jurisdiction cannot be conferred on the court by a party's failure to interpose a timely objection to the court's assumption of jurisdiction.' " 821 P.2d at 1174.

In determining that it lacked jurisdiction under the UCCJA, the court, under Utah's statute which is comparable to K.S.A. 38-1303(a), stated: "In the present case, under subsection (a), Utah is the home state of the children. However, the analysis does not end at determining whether these jurisdictional require-

ments are met." 821 P.2d at 1176. The court then quoted the provisions of the Utah statute which has identical language to K.S.A. 38-1314 and UCCJA § 14 and stated:

"Under this section, both the requirements of subsections (1)(a) and (b) must be met before Utah can modify a decree from another state. . . . 'When both states have adopted the UCCJA, the apparent effect of §§ 14 and 15 is to give continuing exclusive jurisdiction to the initial state as long as that state retains a "significant connection" basis for jurisdiction.' [Citation omitted.] It makes no difference that Utah may have met the jurisdiction prerequisites of section 3; section 14 must also be satisfied in order for this state to modify the Montana award.

. . . .

". . . '[A]s long as one parent continues to reside in the original state and maintains some contact with the child' [citation omitted], jurisdiction remains in the decree state.

"Mrs. Crump's argument that jurisdiction automatically shifted to Utah, the new home state, when she and the children moved there, is without merit. Mr. Crump continues to reside in Montana, where the original custody decree was issued. Montana has not relinquished jurisdiction, nor have the parties sought to have Montana do so. Instead, Mr. Crump chose to petition the courts of Utah for a modification of custody. Therefore, under the UCCJA, Montana has continuing exclusive jurisdiction and has not declined to exercise its jurisdiction in this case." 821 P.2d at 1176-77.

The facts in the present case illustrate what the UCCJA attempts to avoid. Here the parties' original divorce and custody orders were granted in Iowa. Mark continues to live in Iowa and Grant now apparently resides in Iowa, at least one-half of the year. The Iowa court, which had initial jurisdiction of all the parties and the subject matter, continues to have jurisdiction under the Kansas Act and the UCCJA. Mark, for whatever reason, chose to come into Kansas and attempt to confer jurisdiction on the Kansas courts. Now, Kathleen has again moved and is residing in Missouri; yet the Kansas court, where none of the parties are located, desires to assert jurisdiction. Until such time as Iowa relinquishes jurisdiction, or otherwise loses jurisdiction for reasons contained in other sections of the UCCJA which are not applicable to the facts before us, Iowa continues to have exclusive jurisdiction to modify the original custody order.

We conclude that the general rule of continuing exclusive jurisdiction in the state which issued the initial custody decree, as discussed by the authorities and cases cited herein, is the ap-

propriate rule under the provisions of the UCCJA and the Kansas version of the uniform act. Under the facts of this case, the District Court of Montgomery County lacks jurisdiction of the present motion to modify and lacked jurisdiction to enter the previous orders of June 21, 1990, and December 21, 1990.

We reverse the district court's decision that it had jurisdiction and remand the case with directions to dismiss all proceedings.

ABBOTT, J., concurring in the result.