(883 P.2d 785)
No. 71,071

In the Matter of the Marriage of EDWARD L. HARRIS, *Appellant,* and BRUKENTTA M. HARRIS, *Appellee.*

Opinion
filed October 28, 1994.

*Charles E. Watson,* of Wellington, for the appellant.

*William A. Vickery,* of McMaster & McMaster, of Wichita, for the appellee.

Before BRISCOE, C.J., ROYSE, J., and E. NEWTON VICKERS, District Judge Retired, assigned.

BRISCOE, C.J.: Edward L. Harris, petitioner in a divorce proceeding, appeals from the district court's ruling that it had no jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), K.S.A. 38-1301 *et seq.,* to determine who should have custody of the parties' two minor children.

Edward and Brukentta Harris were married in Georgia in 1989. They have two minor children, Zachariah born in 1989, and Kelsey born in 1992. Since their birth, the children have lived with their parents in Georgia, Nevada, Indiana, and again in Georgia. The parties and their children resided together in Georgia from January 1993 until March 1993, when the parents separated and the father returned to his family home in Kansas. The mother and the children remained in Georgia. The father continued to support the family, but in August 1993, the mother began denying him telephone contact with the children.

On September 25, 1993, the father visited the family in Georgia. The parties have stipulated that he took the children back to Kansas without the mother's knowledge or consent. According to a police report on the incident, he told the mother he was taking the children to McDonald's for Zachariah's birthday. At that time, there was no court order granting custody to either parent, and no child custody proceedings were pending anywhere.

On September 27, 1993, the father filed a petition for divorce in Kansas, seeking custody of the children. The trial court entered an ex parte order granting the father temporary custody of the children. On October 12, the mother filed for divorce in Georgia, seeking custody of the children. Three days later, she filed a motion in Kansas seeking modification of the temporary custody order, arguing that under the UCCJA, custody should be determined in Georgia. She raised the same issue in her answer to the divorce petition.

Although the children had not resided in Kansas until the father brought them to his family home, and the parents had never resided in Kansas while they were married, the parties have stipulated that the children have a significant connection to both Georgia and Kansas, and that substantial evidence concerning their present and future care, protection, training, and personal relationships is available in both states.

The trial court ruled that it had no jurisdiction under the UCCJA to determine child custody. The court concluded that Georgia was the children's home state, where they had more significant connections, and that it would not be in their best interests to determine custody in Kansas. The court also ruled that if it had jurisdiction, it should be declined under K.S.A. 38-1308(a) because the father's conduct in taking the children to Kansas and obtaining an ex parte order for temporary custody constituted wrongful or reprehensible conduct. After denying the father's motion to alter or amend, the court rescinded the temporary custody order and ordered the father to turn the children over to the mother. In the divorce decree, the trial court repeated its ruling that it lacked jurisdiction to determine child custody.

The father contends the UCCJA is inapplicable to an *initial* determination of child custody in a divorce proceeding under K.S.A. 1993 Supp. 60-1610. He argues that the UCCJA is limited to proceedings for change or modification of prior custody orders. These arguments are without merit.

The issue is one of statutory construction, which is a question of law, and the appellate court is not bound by the decision of

the trial court. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

The UCCJA expressly applies to an initial determination of custody in a divorce proceeding. K.S.A. 38-1303(a) provides that a district court "has jurisdiction to make a child custody determination by initial or modification decree" if one of four sets of circumstances are present. K.S.A. 38-1302(d) defines a "[d]ecree" or "custody decree" as "a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree." Subsection (b) defines a "[c]ustody determination" as "a court decision and court orders and instructions providing for the custody of a child." Subsection (c) defines a "[c]ustody proceeding" to include proceedings "in which a custody determination is one of several issues, such as an action for divorce or separation." Subsection (f) defines an "[i]nitial decree" as "the first custody decree concerning a particular child." The Comment to § 3 of the UCCJA, 9 U.L.A. 145 (1988), states: "This section governs jurisdiction to make an initial decree as well as a modification decree." See *In re Marriage of Mosier*, 251 Kan. 490, 494-95, 836 P.2d 1158 (1992).

The father's argument is based on the legislative history of 60-1610. When the legislature adopted the UCCJA in 1978, it amended K.S.A. 60-1610(a) to provide: "The court shall make provision for the custody of the minor children only when the court has jurisdiction to make a child custody decree under the provisions of the uniform child custody jurisdiction act." See L. 1978, ch. 231, § 30.

In 1982, the legislature amended 60-1610 extensively. L. 1982, ch. 152. As amended, the statutory provisions on change of custody provided: "Subject to the provisions of the uniform child custody jurisdiction act (K.S.A. 38-1301 *et seq.* and amendments thereto), the court may *change or modify any prior order* of custody when a material change of circumstances is shown." (Emphasis added.) By contrast, the provisions on the criteria for child custody determinations made no reference to the UCCJA. L. 1982, ch. 152, § 9. These provisions have not been substantially changed. See K.S.A. 1993 Supp. 60-1610(a)(2) and (3).

Viewed alone, this change in the statutory language tends to support the father's argument that the UCCJA is limited to proceedings to change or modify prior custody orders and is inapplicable to an initial determination of custody in a divorce proceeding under 60-1610. However, any presumption that the 1982 amendment to 60-1610 was intended to change the scope of the UCCJA is weak, because it was not an isolated, independent amendment, but part of a general revision of the divorce statutes in L. 1982, ch. 152. See *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.*, 231 Kan. 731, 736, 648 P.2d 1143 (1982).

In effect, the father argues that the provisions of the UCCJA relating to initial determinations of custody in divorce proceedings were repealed by implication by the 1982 amendment to 60-1610. However, repeal by implication is not favored. A statute will not be held to have been repealed by implication unless the later enactment is so repugnant to the first that both cannot be given force and effect. *City of Salina v. Jaggers*, 228 Kan. 155, 169, 612 P.2d 618 (1980).

Thus, we must construe both statutes together to determine the intent of the legislature because they concern the same subject matter. See *Martindale v. Tenny*, 250 Kan. 621, 631-32, 829 P.2d 561 (1992). The legislative intention should be determined from a general consideration of the entire act. Effect should be given to every part of the act, if possible, and the court should construe the different provisions in a consistent, harmonious, and sensible manner. When literal interpretation of one section of an act would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason. See *Todd v. Kelly*, 251 Kan. at 516.

The language of 60-1610(a)(3) is not inconsistent with application of the UCCJA to initial determinations of custody in divorce proceedings. Child custody determinations under 60-1610(a)(3) must be made "in accordance with the best interests of the child." The express goal of the UCCJA is for custody decrees to be entered by the courts of the state "which can best decide the case in the interest of the child." K.S.A. 38-1301(a)(2); see 38-1303(a)(2) through (4); K.S.A. 38-1307(c). Under 60-

1610(a)(3), a court could determine that it is in the best interests of the children that custody be determined in another state with closer connections to the children in accordance with the UCCJA. See *Bills v. Murdock*, 232 Kan. 237, 654 P.2d 406 (1982). Moreover, if the father's argument were correct, the express provisions in the UCCJA for child custody determinations by initial decree in divorce proceedings would be of no effect.

The construction urged by the father would be contrary to the express purposes of the UCCJA set out in 38-1301(a), which are to:

"(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the child's family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states;

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) make uniform the law of those states which enact it."

The father's construction would permit the courts of this state to make initial custody decrees that did not conform to the UCCJA. Under his theory, a court could make an initial decree in a divorce proceeding although none of the four alternative jurisdictional prerequisites of 38-1303(a) were satisfied. Under § 13 of the UCCJA, other states would not be required to recognize

or enforce such decrees because they would not meet the jurisdictional standards of the uniform act. 9 U.L.A. 276 (1988). Moreover, under the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A (1988), such decrees would not be entitled to full faith and credit in other states. The Kansas decrees could be ignored in child custody proceedings commenced in other states. See 1 Elrod, Kansas Family Law Handbook §§ 12.021A 2, 12.022B 1 and 2 (rev. ed. 1990). This result would permit continuing competition and conflict with courts of other states, contrary to 38-1301(a)(1) and (4).

The father's construction therefore would permit custody litigation to take place in this state even though other states with closer connections to the child and the family would be in a better position to determine the child's best interests, contrary to 38-1301(a)(2) and (3). See *Bills v. Murdock*, 232 Kan. 237. It would also encourage rather than deter parental kidnappings and other unilateral removals of children undertaken to obtain custody awards, contrary to 38-1301(a)(5). Finally, the father's construction limiting the UCCJA to modification of prior decrees would be contrary to 38-1301(a)(9), by making the child custody jurisdiction law of this state distinctly different from that of the other states that have adopted the UCCJA. See Comment to § 3, 9 U.L.A. 144.

We conclude that the 1982 amendment to 60-1610 did not repeal or amend the provisions of the UCCJA relating to initial determinations of custody in divorce proceedings. The legislature did not intend to make the UCCJA inapplicable to initial child custody determinations in divorce proceedings.

The father also contends that application of the UCCJA to an initial custody determination in a divorce proceeding violates Article 15, § 6 of the Kansas Constitution. He first argues the UCCJA is unconstitutional on its face. We disagree.

Kan. Const. art. 15, § 6 provides: "The legislature shall provide for the protection of the rights of women, in acquiring and possessing property, real, personal and mixed, separate and apart from the husband; and shall also provide for their equal rights in the possession of their children." Under this constitutional pro-

vision, "in the absence of a court order both parents have an equal right to the custody of their minor children." *State v. Al-Turck*, 220 Kan. 557, 558, 552 P.2d 1375 (1976).

Throughout his arguments, the father appears to confuse a court's ultimate ruling on custody with a court's preliminary ruling on jurisdiction. Application of the jurisdictional standards of the UCCJA to initial determinations of custody in divorce proceedings does not violate parents' equal constitutional rights to custody of their children. Under the UCCJA, all parents seeking an initial determination of custody in a Kansas divorce proceeding are subject to the same jurisdictional rules. General rules that apply evenhandedly to all persons similarly situated do not violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. *Carlson v. Carlson*, 8 Kan. App. 2d 564, 567, 661 P.2d 833 (1983). In *In re Wicks*, 10 Kan. App. 2d 124, 128, 693 P.2d 481 (1985), the court rejected a mother's argument that the UCCJA denied her equal protection because she failed to show how the UCCJA treated her any differently than other parents involved in custody disputes. Similarly, here, the father has failed to show how the UCCJA treated him any differently than other similarly situated parents; the UCCJA does not on its face violate his equal right to custody under Kan. Const. art. 15, § 6.

The father also contends that as applied in this case, the UCCJA violated his constitutional equal right to custody. He argues that by declining jurisdiction for wrongful or reprehensible conduct under 38-1308(a), the court penalized him for exercising his equal right to custody. We need not address this issue because declining jurisdiction under 38-1308(a) was an alternative ground for the trial court's order. The court also ruled that it had no jurisdiction under the UCCJA because it concluded it was not in the children's best interests for a Kansas court to determine custody when the children had a closer connection to Georgia, which was their home state under 38-1302(e). This conclusion was correct and provided a valid basis for declining jurisdiction in favor of Georgia.

The only possible basis for jurisdiction under the UCCJA in this case was 38-1303(a)(2), which provides that a court has jurisdiction if

"it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

The purpose of the UCCJA is to limit jurisdiction rather than to proliferate it. Jurisdiction under the UCCJA requires maximum rather than minimum contacts between the child and the forum state. Accordingly, 38-1303(a)(2) must be construed narrowly so that, ordinarily, child custody litigation takes place in the state with which the child and the child's parents have the closest connections. In most cases this will be the child's home state under 38-1302(e). *Bills v. Murdock*, 232 Kan. at 241-43. See *Hart v. Hart*, 236 Kan. 856, 859, 695 P.2d 1285 (1985). The presence of one parent in the state and occasional visits to the state by a child are not sufficient to establish a significant connection under 38-1303(a)(2). *Hart v. Hart*, 236 Kan. at 860-61; *Bills v. Murdock*, 232 Kan. at 243.

Here, the record shows that the children had not lived in this state until the day before the father filed his divorce petition, and there is no indication that they ever visited Kansas. The children could not have a significant connection to Kansas. However, the parties stipulated that the father's evidence, if presented, would make out a prima facie case that the children had a significant connection to Kansas and that substantial evidence relevant to custody was available in Kansas. The validity of this stipulation is questionable because it can be characterized as a stipulation to a conclusion of law. Although stipulations of fact are binding on the courts, stipulations of law are not. See *State v. Young*, 228 Kan. 355, 357, 614 P.2d 441 (1980). Moreover, the stipulation may represent an attempt by the father to confer jurisdiction. Ordinarily, parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel. See *In re Marriage of Mosier*, 251 Kan. at 493.

We need not decide whether the stipulation was valid because the stipulation did not establish that it was in the best interests of the children that custody be decided in Kansas, one of the requirements for jurisdiction under 38-1303(a)(2). A child's best interests are served when a custody determination is made in the state that has the closest connection to the child, which is ordinarily the child's home state. *Bills v. Murdock*, 232 Kan. at 241-42. Here, the trial court found the children had closer connections to Georgia.

Kansas was not the children's home state under 38-1302(e) because they had not lived in Kansas for six months "immediately preceding the time involved." As the trial court concluded, Georgia was their home state. They had lived in Georgia for more than six months immediately prior to being removed to Kansas. Georgia could assert home state jurisdiction under § 3(a) of the UCCJA for six months after their removal. Ga. Code Ann. § 19-9-43(a)(1) (1991). The mother invoked that jurisdiction within one month after removal of the children by filing her petition for divorce in Georgia and seeking custody. The father's assertion that the trial court improperly departed from the stipulated facts by finding that Georgia was the children's home state is without merit. That was a legal conclusion properly drawn from the stipulated facts.

It would not be in the best interests of the children for custody to be determined in Kansas when Georgia is their home state because a Kansas custody determination under these circumstances would not be binding in other states under the PKPA. It should be noted that despite the title, the PKPA applies to interstate custody disputes whether or not there has been a parental kidnapping or other misconduct. Under subsections (a) and (c)(2) of the PKPA, a custody determination by one state based on significant connection jurisdiction when another state has home state jurisdiction is not entitled to full faith and credit in other states. See, *e.g., Atkins v. Atkins*, 308 Ark. 1, 823 S.W.2d 816 (1992). See 1 Elrod, §§ 12.021A2, 12.022B 1 and 2. Here, exercise of jurisdiction would only have resulted in a custody decree that could be ignored in other states, encouraging further custody litigation contrary to the children's best interests. See K.S.A. 38-1301.

*Larsen v. Larsen,* 5 Kan. App. 2d 284, 615 P.2d 806, *rev. denied* 228 Kan. 807 (1980), does not require a different result. In *Larsen,* the court concluded Kansas had jurisdiction under the UCCJA although it was not the children's home state and that the trial court was not required to decline jurisdiction under the inconvenient forum provisions of K.S.A. 38-1307. However, *Larsen* may no longer be good law because it was decided before the PKPA took effect. Before enactment of the PKPA, a child custody determination based on the significant connection provisions of 38-1303(a)(2) would be entitled to recognition and enforcement by other states even though another state was the home state. See UCCJA § 13, 9 U.L.A. 276. Under the PKPA, such a determination would not be entitled to full faith and credit in other states. Moreover, *Larsen* is distinguishable because the children there had very strong connections to the state as they were born in Kansas and had lived in Kansas most of their lives.

We agree with the trial court's conclusion that it was not in the best interests of the children that custody be determined in Kansas when they had closer connections to Georgia, their home state. Jurisdiction could not be based on a "significant connection" of the children with Kansas because 38-1303(a)(2) applies only when "it is in the best interest of the child that a court of this state assume jurisdiction." Even if Kansas had significant connection jurisdiction under 38-1303(a)(2), when another state is the child's home state a court of this state would be required to decline jurisdiction under 38-1307(a). It is inherently an abuse of discretion to make a custody determination that can be freely ignored by other states under the PKPA.

Affirmed.